19146

The STATE, Respondent, v. Gene McRAE, Appellant

(178 S. E. (2d) 666)

*Messrs. Samuel J. Abrams,* and *Stanley W. Applebaum,*
of Sumter, *for appellant,*

*Messrs. Daniel R. McLeod, Atty Gen.* and *Emmet H. Clair, Asst. Atty. Gen.,* of Columbia, and *R. Kirk McLeod, Esq., Sol.* of Sumter, *For Respondent,*

*Messrs. Samuel J. Abrams,* and *Stanley W. Applebaum in Reply.*

January 11, 1971.

LITTLEJOHN, Justice:

The defendant, Gene McRae, appeals from his conviction of housebreaking, safecracking, and larceny. We affirm that conviction.

The questions raised on this appeal concern the search of a red Pontiac automobile and the seizure by police officers of recently stolen goods from the car; it is the contention of appellant that the goods were wrongfully seized and should not have been admitted in evidence.

The facts leading to appellant's conviction may be summarized as follows:

Around three o'clock A. M., February 7, 1968, James Nettles' food store was broken into. The store's safe was

cracked and about $5,000 in money was stolen along with a shotgun and a pistol.

Shortly before that, a woman driving a red Pontiac had lured the store's night watchman away from his post under the pretense of getting some coffee with her. After she brought him back to the store he discovered that the store had been entered, the safe opened, and property taken.

At about the same time as the watchman's discovery, a red Pontiac with Florida license plate was spotted near Nettles' store by Sheriff's Deputy Player. The car had run into a ditch and Deputy Player called a wrecker to pull it out. After the wrecker had pulled the car out of the ditch, and as the deputy was passing back by Nettles' store the night watchman stopped him and reported the breaking, entering and theft. Player called in the Florida license tag number of the red Pontiac to a dispatcher, along with a description of the woman.

The sheriff of Sumter County was called by the dispatcher and left his home to investigate. While proceeding to Sumter the sheriff met a red Pontiac leaving town. He turned around, and followed the car to verify the license number received, and then stopped it.

The appellant McRae and another man were in the car with the woman when it was stopped. The woman was arrested on the scene and all three were searched and taken to the sheriff's office along with the Pontiac. A pistol was found in the woman's handbag.

Mr. Nettles was called. He identified the pistol taken from the woman's handbag as the pistol stolen from his store. Thereafter a search warrant for the automobile was obtained from the local magistrate. Officers searched the car and found two pasteboard boxes containing a total of $4,976.00 in currency and change stolen from the Nettles store. Thereupon appellant was arrested and charged with housebreaking, safecracking, and larceny.

At trial appellant's counsel objected to the introduction of the seized money into evidence on the ground that it was the fruit of an illegal search and seizure. He contended that the affidavit upon which the warrant was issued was insufficient and that probable cause was not shown the magistrate to justify his action. The judge allowed the evidence. Appellant offered no evidence and was convicted.

We must first determine whether the affidavit upon which the search warrant was based established probable cause.

In this issue appellant relies on our cases of *State v. York,* 250 S. C. 30, 156 S. E. (2d) 326 (1967), and *State v. Hill,* 245 S. C. 76, 138 S. E. (2d) 829 (1964). In Hill we said:

"We think it elementary that the determination of whether or not there is probable cause must be made by the officer empowered to issue the search warrant, and not by a police officer or other individual who seeks the warrant."

In *York,* our court held that:

"The judicial officer was not enlightened as to the facts and circumstances which engendered the sheriff's belief that illegal drugs would be found on Hattie York's premises. Without such facts, he could not form a responsible judgment as to the existence of probable cause. Since the affidavit was thus deficient, the search warrant lacked the support required by the relevant constitutional and statutory provisions and was a nullity."

Appellant urges that the following statement from the United States Supreme Court in *Aguilar v. Texas,* 378 U. S. 108, 84 S. Ct. 1509, 12 L. Ed. (2d) 723 (1964) is dispositive:

"* * * the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were * * *."

Appellant is correct in concluding that these quotations fairly set out the minimum legal requirements for the is-

suance of a search warrant based on an affidavit. This analysis, however, does not dictate the result sought by appellant because the facts in the case at bar are inapposite to those in Hill, York, and Aguilar.

The affidavit upon which the warrant was issued met the constitutional requirements of Aguilar; it reads:

"*Personally* appeared before me C. M. Brown, who, being duly sworn, deposes and says that: He has been informed and does believe that there is concealed and stored in a red 2-door Pontiac Lemans, Florida 1968 License No. 2E4352 in the County of Sumter, State of South Carolina, money in currency and coins in excess of $5,000.00, a Foy double barrell shot gun and burglary tools.

"That such information was given to the affiant by T. L. McJunkin who has been known to the affiant for a period of approximately 6 years, and that he is known to the affiant to have been generally reliable during such period of time. "That information of a like nature has been imparted to the affiant by T. L. McJunkin on more than 8 occasions in the past, and that such information has proven to have been based on facts.

"That such informer has related to the affiant that on the night of February 6, 1968, three persons robbed James P. Nettles' store and stored the loot in the above described automobile."

The details obviously supplied by the informer must have impressed the affiant and justified his belief in the truthfulness of the information given. In turn, the magistrate was justified in concluding that probable cause for a search was shown because first, of the facts the affiant swore to, and secondly, because considerable detail was supplied by the informer. The magistrate was entitled to evaluate the entire affidavit. Probable cause justifying the warrant was shown.

This affidavit sets out the time and place of the robbery, the license number and make of the car involved, a thorough descrption of the material stolen, and a comprehensive

statement as to the reliabiltiy of the informant policeman. We conclude that this affidavit contains more than the mere conclusionary statements found to be unsatisfactory in York and Hill.

> Even if the search warrant was invalid, the appeal must fail. The search under the circumstances was reasonable.

At the outset it is clear, and conceded by the State, that under *Preston v. United States,* 376 U. S. 364, 84 S. Ct. 881, 11 L. Ed. (2d) 777 (1964) this search was not "incident to" a lawful arrest because it was too far removed in time and place from where the car was first stopped.

The search must still be upheld as "reasonable" under the recent United States Supreme Court ruling in *Chambers v. Maroney,* 399 U. S. 42, 90 S. Ct. 1975, 26 L. Ed. (2d) 419 (decided June 22, 1970). Chambers is controlling here. In Chambers, on facts strikingly similar to those before us, an automobile was stopped and its occupants arrested on robbery charges. The occupants were taken into custody and their automobile driven to the police station where it was there searched without a warrant, resulting in the discovery of a weapon and other evidence which was admitted against them at trial.

The United States Supreme Court sustained the conviction because the police had probable cause to search at the time the car was stopped and this probable cause continued to exist at the police station.

The Court stated:

" 'The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law.' " *Carroll v. United States,* 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925).

Appellant urges that there is quite a difference in searching the car at the time it is stopped, and searching it later

when the occupants are no longer present. In Chambers the court spoke of this alleged distinction:

"For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment."

The court recognized that probable cause, if present when the car was stopped, still existed at the station house.

Here the police had probable cause to believe that the defendants, carrying the guns stolen and the fruits of the crime, had fled the scene with a young woman driving a red 1968 Pontiac with designated Florida license plate. They had a positive identification of the woman, linking her to the place of the crime in highly suspicious circumstances.

We conclude, therefore, that the search and seizure in this case were valid both under the warrant and under the "reasonableness" doctrine of *Chambers v. Maroney;* the decision of the lower court is

Affirmed.

Moss, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ. concur.