No. 24850.

THE PEOPLE OF THE STATE OF COLORADO *v.* TIMOTHY ALLEN BRETHAUER, RONALD VESTER SHULER AND KENNETH HARVEY RICE.
(482 P.2d 369)

Decided March 8, 1971.

Duke W. Dunbar, Attorney General, James H. Shelton, District Attorney, William L. West, Deputy, for plaintiff-appellee.

Williams, Trine and Greenstein, William D. Neighbors, for defendants-appellants Ronald Vester Shuler and Kenneth Harvey Rice.

WILLIAM E. SHADE, for defendant-appellant Timothy Allen Brethauer.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

THIS is an interlocutory appeal from a trial court's ruling which denied a motion to suppress as evidence certain narcotics and other related articles in police possession as the result of a search and seizure based upon a search warrant.

Timothy Allen Brethauer, Ronald Vester Shuler, and Kenneth Harvey Rice are the defendants in the trial court and are the appellants here. They were charged with possession of marijuana, possession of dangerous drugs, possession of marijuana for sale, and with dispensing of dangerous drugs.

Probable cause is the touchstone in this area of the law, and it is only upon a showing of probable cause that the legal doors are opened to allow the police to gain official entry into an individual's domain of privacy for the purpose of conducting a search or to make an official seizure under the Constitution. *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). *Accord, Warden v. Hayden,* 387 U.S. 294, 87 S. Ct. 1642, 18 L.Ed.2d 782 (1967), concurring opinion; *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), concurring opinion; *Vale v. Louisiana,* 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970); and *Colonnade Catering Corp. v. United States,* 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970).

In *Gonzales v. People,* 156 Colo. 252, 398 P.2d 236 (1965), we adopted the following definition of probable cause and provided guidelines to ascertain the existence of probable cause:

"* * * Probable cause exists where the facts and circumstances within the officers' knowledge, and of which they

had reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. *Ker v. California, supra* [374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726]; *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L. Ed. 543; *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879. In dealing with probable cause, one deals with probabilities. 'These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. * * *' "

■ Obviously, the existence of probable cause must be determined by a member of the judiciary, rather than by a law enforcement officer who is employed to apprehend criminals and to bring before the courts for trial those who would violate the law. *Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948).

■ The role of the police officer in search warrant practice is limited solely to providing the judge with facts and trustworthy information upon which he, as a neutral and detached judicial officer, may make a proper determination. *Giordenello v. United States,* 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958); *Johnson v. United States, supra.*

The defendants in this case contend that the affidavit which supported the issuance of the search warrant did not meet constitutional standards. If the search warrant is to be sustained, this Court must find that the affidavit complied with the standards set forth in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, *Annot.* 10 A.L.R.3d 359 (1966), and in *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

The affidavit upon which the search warrant was issued in the instant case set forth the following facts and circumstances:

"Thomas A. Connell, being first duly sworn upon his oath says: that he has reason to believe that on the premises known as 1532 9th Ave., Greeley, Colorado and a red

and black Comet automobile and a green chevrolet panel truck parked at or near the premises there is located certain property, to-wit: L.S.D., S.T.P., marijuana and other narcotics and dangerous drugs and instruments for use in connection with narcotics and dangerous drugs, which property is designed or intended for use in committing a criminal offense, the possession of which is illegal and would be material evidence in a subsequent criminal prosecution.

"The facts upon which this affidavit is based are as follows:

"That an informer, known to the affiant to be reliable, based on past information supplied by the informer which has proved to be accurate has told the affiant that approximately 50 capsuls [sic] containing L.S.D. and at least two ounces of marijuana are at these premises. The informer has on two occassions [sic] purchased L.S.D. and S.T.P. within the past five days. These capsuls [sic] were delivered to the Weld County Sheriff's Office and were tested and did contain L.S.D. and S.T.P. At the time of purchase the informer saw other capsuls [sic] containing L.S.D. and S.T.P. and the party making the sale said he had two ounces of marijuana. The party also said he was going to obtain 100 additional capsuls [sic] of L.S.D. and two kilograms of marijuana and offered to sell to the informer one kilogram of marijuana. The informer is to make the purchase today. The informer also saw instruments for use in smoking marijuana on the premises."

■■ The affidavit is fatally defective, and the trial court should have granted the defendants' motion to suppress for the following reasons:

1. The reliability of the informer is not established, and no basis is set forth to establish the source of this information.

2. The affidavit refers to three locations; namely, two automobiles and a house, and nothing in the affidavit indicates how the informer concluded that narcotics were

present in the house or that there was a connection between the defendants and the automobiles or the house.

3. The affidavit does not set forth whether the information obtained by the informer was from another person or through the informer's own observations.

4. There is no statement in the affidavit as to whether the alleged purchases took place on the premises or involved persons who were in any way related to or associated with the subject premises.

5. Nothing appears in the affidavit to establish whether the capsules and marijuana were observed by the informer or by someone else.

6. Nothing appears in the affidavit to establish where the "instruments" were observed.

In *Aguilar v. Texas, supra,* a search warrant was issued upon an affidavit of police officers who swore only that they had received reliable information from a credible person and believed that narcotics were being illegally stored on the described premises. The Supreme Court, in striking down the affidavit, recognized that the constitutional requirement of probable cause could be satisfied by hearsay information, but held the affidavit to be inadequate for two reasons: First, the application failed to set forth any of the "underlying circumstances" necessary to enable the magistrate independently to judge the validity of the informant's conclusion that the narcotics were where he said they were. *See also McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967). Second, the affiant-officers did not attempt to support their claim that their information was "credible" or that their informant was reliable.

In redefining and in giving better guidelines to the two-pronged test enunciated in *Aguilar,* the Supreme Court, in *Spinelli v. United States, supra,* struck down an affidavit that was more complete than the affidavit that is before us for review. (The affidavit in *Spinelli* is reproduced fully in an appendix to the opinion.) The affidavit stated, in essence:

1. The FBI had kept track of Spinelli's movements on five days during the month of August, 1965. On four of these occasions, Spinelli was seen crossing one of two bridges leading from Illinois into St. Louis, Missouri, between 11:00 A.M. and 12:15 P.M. On four of the five days, he was also seen parking his car in a lot used by residents of an apartment house in St. Louis between 3:30 P.M. and 4:15 P.M. One day, Spinelli was followed further and seen to enter a particular apartment in the building.

2. An FBI check with the telephone company revealed this apartment contained two telephones listed under the name of Grace P. Hagen, carrying given numbers.

3. "William Spinelli is known to this affiant and to federal law enforcement agents and local law enforcement agents as a bookmaker, an associate of bookmakers, a gambler, and an associate of gamblers."

4. The FBI "has been informed by a confidential reliable informant that William Spinelli is operating a handbook and accepting wagers and disseminating wagering information by means of the telephones which have been assigned" specified numbers.

In holding this affidavit constitutionally inadequate, the Court said:

"* * * [W]e first consider the weight to be given the informer's tip when it is considered apart from the rest of the affidavit. It is clear that a Commissioner could not credit it without abdicating his constitutional function. Though the affiant swore that his confident was 'reliable,' he offered the magistrate no reason in support of this conclusion. Perhaps even more important is the fact that *Aguilar's* other test has not been satisfied. The tip does not contain a sufficient statement of the underlying [facts] from which the informer concluded that Spinelli was running a bookmaking operation. We are not told how the FBI's source received his information — it is not alleged that the informant personally observed Spinelli at work or that he had ever placed a bet with him. More-

over, if the informant came by the information indirectly, he did not explain why his sources were reliable. Cf. *Jaben v. United States*, 381 U.S. 214 [85 S.Ct. 1365, 14 L.Ed.2d 345] (1965). In the absence of a statement detailing the manner in which the information was gathered, it is specifically important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation."

This Court has construed these guidelines and standards in many cases. The landmark case of *Hernandez v. People*, 153 Colo. 316, 385 P.2d 996 (1963), predated *Spinelli*, but provided standards that square with the constitutional principles that have now been so well defined by the Supreme Court of the United States. In *Hernandez v. People, supra*, we said:

"The Fourth Amendment to the United States Constitution requires probable cause supported by oath or affirmation as a condition precedent to the valid issuance of a search warrant. The Colorado Constitution, Article II, Sec. 7, is even more restrictive and provides that probable cause must be supported by oath or affirmation *reduced to writing*. The determination of whether probable cause exists is a judicial function to be performed by the issuing magistrate, which in Colorado may be any Judge of the Supreme, District, County, Superior or Justice of the Peace Court under Rule 41, Colo.R. Crim.P., and is not a matter to be left to the discretion of a police officer. Before the issuing magistrate can properly perform his official function he must be apprised of the underlying facts and circumstances which show that there is probable cause to believe that proper grounds for the issuance of the warrant exist. Mere affirmance of the belief or suspicion on the officer's part is not enough. To hold otherwise would attach controlling significance to the officer's belief rather than to the

magistrate's judicial determination. *Dumbra v. United States,* 268 U.S. 435, 69 L.Ed. 1032, 45 S.Ct. 546; *Nathanson v. United States,* 290 U.S. 41, 78 L.Ed. 159, 54 S.Ct. 11; *State v. Macri,* 39 N.J. 250, 188 A (2d) 389; 4 *Wharton's Criminal Law and Procedure,* §§ 1543 and 1545 and cases collected therein. Therefore, the affidavits in question here containing only the conclusion of Officer Borden that he believed that certain property was on the premises or person and that such property was designed or intended or was or had been used as a means of committing a criminal offense or the possession of which was illegal, without setting forth facts and circumstances from which the judicial officer could determine whether probable cause existed were fatally defective. The warrants issued thereon were nullities. Any search conducted under them was unlawful. The fruits of such a search are, by *Mapp,* supra and by our Rule 41, Colo. R. Crim. P., inadmissible in evidence."

Subsequently, we have been called upon to determine whether searches conducted under the authority of search warrants were valid and have further clarified the constitutional standards in issue in a series of cases. *People v. Henry,* 173 Colo. 523, 482 P.2d 357; *People v. MacDonald,* 173, Colo. 470, 480 P.2d 555; *Smaldone v. People,* 173 Colo. 385, 479 P.2d 973; *People v. Martinez,* 173 Colo. 17, 475 P.2d 340 (1970); *People v. Peppers,* 172 Colo. 556, 475 P.2d 337 (1970); *People v. Baird,* 172 Colo. 112, 470 P.2d 20 (1970).

In regard to the second prong of the test enunciated in *Aguilar,* we have declared that an affidavit does not establish the credibility of an informant by merely stating that the informant is known to be reliable. *Smaldone v. People, supra; People v. Baird, supra.* Nor does an affidavit establish the credibility of an informant by merely stating that the informant is known to be reliable based on past information supplied by the informer which has proved to be accurate. Although the words "past information" might conjure up in the mind of the officer

some knowledge of the underlying circumstances from which the officer might conclude that the informant was reliable, the judge has not been apprised of such facts, and consequently, he cannot make a disinterested determination based upon such facts.

The second prong of the test enunciated in *Aguilar* may also be satisfied by establishing the reliability of the facts provided by the informant. In *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), the Court upheld an arrest and a search when the arresting officer had facts in such depth that the information could not have been obtained except through a reliable method.

An affidavit setting forth the facts outlined in *People v. Martinez, supra,* would also be sufficient to establish the reliability of an informant's information. In *Martinez,* we concluded that the informant's facts were reliable by virtue of the following evidence: (1) the informant had previously given reliable information to the Pueblo Police Department; (2) an officer verified some aspects of the informant's information before the defendant's arrest (namely, that a check said to be stolen was, in fact, missing); (3) the defendant was riding in the same car described by the informant; (4) prior to the defendant's arrest, he was seen by a police officer putting an envelope (believed to contain the stolen check) in a small paper sack.

In determining whether the affidavit is sufficient, the judge must look within the four corners of the affidavit to determine whether there are grounds for the issuance of a search warrant. *Spinelli v. United States, supra; United States v. Roth,* 391 F.2d 507 (7th Cir. 1967); *United States v. Whitlow,* 339 F.2d 975 (7th Cir. 1964); *United States v. Ramirez,* 279 F.2d 712 (2nd Cir. 1960); *People v. MacDonald, supra;* Colo. Const. art. II, § 7; Crim. P. 41(c). It is, of course, elementary and of no consequence that the police might have had additional information which could have provided a

basis for the issuance of the warrant. Should the judge to whom application has been made for the issuance of a search warrant determine that the affidavit is insufficient, he can require that sworn testimony be offered to supplement the warrant or can demand that the affidavit be amended to disclose additional facts, if a search warrant is to be issued. Under our Constitution, the warrant can only be issued upon probable cause supported by oath or affirmation which is reduced to writing. Colo. Const. art. II § 7. Moreover, Crim. P. 41 (c) requires an affidavit to support a search warrant, which establishes the grounds for the issuance of the warrant, and demands that the affidavit be sworn to before the judge. Accordingly, the testimony taken would have to be reduced to writing and signed by the witness or witnesses that offered testimony, under oath, to supplement the affidavit.

It is clear that the affidavit before us for review in this case fails to measure up to the requirements of probable cause which we set out in *Martinez*, and does not comply with the required constitutional standards that were set out in *Spinelli v. United States, supra*, and *Aguilar v. Texas, supra*.

Therefore, the order denying the defendants' motion to suppress is reversed.

MR. JUSTICE HODGES dissenting.

MR. JUSTICE HODGES dissenting:

I respectfully dissent. Admittedly, the affidavit in issue does not approach perfection. It is poorly drafted and lacks preciseness, but probable cause is the criterion and not perfection in draftsmanship. When viewed in the light of probable cause, this affidavit must be said to meet the tests set forth in the majority opinion for the validity of an affidavit underlying a search warrant. *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723; *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584,

21 L.Ed.2d 673; *Hernandez v. People,* 153 Colo. 316, 385 P.2d 996.

First, the affidavit does establish the reliability of the informant. It states that the informant was previously reliable — a fact which though not in itself sufficient to establish reliability, still is not to be discounted. It states that the previously reliable informant purchased L.S.D. and S.T.P. "on two occasions within the past five days" and delivered the purchases to the sheriff's department. Analysis of the purchases verified the existence of L.S.D. and S.T.P., the affidavit states. The affidavit further states the specific amounts of other drugs seen by the informant and relates that "[T]he informant *also saw* instruments for use in smoking marijuana *on the premises*." (Emphasis added.)

Certainly the reliability of an informant may be firmly established from previous reliability plus personal eyewitness observation by the informant in addition to police corroboration. In fact this combination was exactly what was held to be sufficient in order to arrest upon probable cause *without a warrant* in the recent decision *People v. Martinez,* 173 Colo. 17, 475 P.2d 340, cited by the majority. There a previously reliable informant told detectives that he had been shown a check by defendant and the informant described both the check and the defendant and his whereabouts. Detectives determined that the check described had been stolen and arrested the defendant and recovered the check. This court held that there was probable cause for the arrest and that there had been no unlawful search and seizure. However the same three elements for establishing reliability of an informant are held to be insufficient here: (1) the informant was previously reliable; (2) the informant made purchases on the premises and saw instruments relating to smoking marijuana on the premises; (3) analysis of the informant's purchases verified the presence of L.S.D. and S.T.P.

The majority relies upon *Spinelli, supra,* and the recent

decision of this court *Smaldone v. People,* 173 Colo. 385, 479 P.2d 973. The factual settings in those cases are not at all related to the instant case. Both *Spinelli* and *Smaldone* refuted the idea that probable cause could be based upon the assertion that a person was a "well known" or "notorious" gambling figure. That situation is simply not involved in this case.

Perhaps the real basis for the majority opinion is that the affidavit should fail because it is not certain from the affidavit that the described transactions relate to the described premises. But the affidavit describes that the informant states that there are L.S.D. and S.T.P. capsules and marijuana at the premises; that *the informant has made purchases* of the same; and *the informant also saw* instruments for use in smoking marijuana *on the premises.* The first sentence of the affidavit specifically states "[T]he premises known as 1532 9th Ave. . . ." The majority opinion would apparently require every clause of the affidavit to be followed by the phrase "at the premises known as 1532 9th Ave." I do not think that the state or federal constitutions require such super-technical drafting of affidavits.

In testing the sufficiency of a supporting affidavit, the United States Supreme Court in *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684, observed: "These decisions reflect the recognition that the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a common-sense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. *Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area.* A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police

officers from submitting their evidence to a judicial officer before acting." (Emphasis added.)

Considering the entire contents of this affidavit, in the light of the foregoing discussion, I believe that it fully complies with the standards and guidelines of *Aguilar* and *Spinelli*.

I would affirm the ruling of the trial court in denying the motion for suppression.