### THE PEOPLE OF THE STATE OF COLORADO *v.* NATHANIEL WOODS, ALSO KNOWN AS NATHAENIEL WOODS.

## No. 25045.

### THE PEOPLE OF THE STATE OF COLORADO *v.* ROBERT MILES.
(185 P.2d 491)

Decided June 1, 1971.

*Rulings Affirmed.*

CARL PARLAPIANO, District Attorney, DANIEL J. SEARS, Deputy, for plaintiff-appellee.

ROLLIE R. ROGERS, State Public Defender, J. D. MAC-FARLANE, Chief Deputy, BRIAN T. KNIGHT, Deputy, for defendants-appellants.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

THESE interlocutory appeals are prosecuted pursuant to C.A.R. 4.1 and are consolidated because the facts and issues in both cases are the same. The appellants, referred to as defendants herein, contend that the trial court erred in denying their individual motions to suppress evidence which was seized from the car of the defendant Robert Miles. We find no error in the trial courts' denial of the defendants' motions to suppress, and accordingly, we affirm.

The defendants were both charged with the crimes of forgery (C.R.S. 1963, 40-6-1) and conspiracy to commit forgery (C.R.S. 1963, 40-7-35). The charges were based on the following facts: In June 1970, a number of checks were stolen from the office of a Pueblo attorney. The Pueblo Police Department was notified of the theft after an attempt was made to cash one of the checks in a Pueblo food store on June 20, 1970. On June 22, 1970, police officers contacted employees of the food store and were given a detailed description of the man who attempted to pass the check. On the same morning, the police department received a call from another Pueblo food store relating that an attempt had been made to cash a check similar to those stolen. This time, police officers were given a description of the parties attempting to pass the check, as well as a description of the vehicle (a 1965 red Mustang) in which they were riding. This information was broadcast over police radio, and the 1965 red Mustang in which the defendants were riding was observed. Somewhat later, after the vehicle was seen leaving a Safeway Store, the Mustang was stopped, and the defendants were arrested. On the same day, a line-up was held, and Robert Miles and another person, who is not before us, were identified as the individuals who attempted to cash certain checks at the Pueblo food stores. After identification was made at the line-up, a

police officer submitted an affidavit for a search warrant to a Pueblo county judge, and based on the affidavit, a warrant was issued to search the 1965 red Mustang which was owned by Robert Miles. The search which was conducted pursuant to the warrant produced ten folded checks which were wrapped in a white handkerchief and concealed under the front seat of the Mustang.

The defendants contend that the search of the car was conducted pursuant to a search warrant and that the siezures did not arise out of a search incident to their arrest. Thus, they argue that the admissibility of the evidence seized must stand or fall on the validity of the search warrant. They claim that the search warrant was invalid, because the affidavit upon which the warrant was predicated contained false allegations and erroneous statements of underlying facts and circumstances which were relied upon by the court in issuing the warrant. On the basis of the errors alleged, they believe that the evidence seized pursuant to the warrant should be suppressed. *United States v. Roth,* 391 F.2d 507 (7th Cir. 1967).

We cannot agree that the right to search the car under the circumstances of this case is so narrowly proscribed. Because the officers elected to obtain a search warrant is no reason to hold that the officers cannot justify the search either as being incident to an arrest or under the authority of the exceptions and limitations announced in *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed. 2d 419 (1970); *Dyke v. Taylor Implement Manufacturing Co.,* 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968); *Cooper v. California,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967); and *Preston v. United States,* 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964). Several states have already upheld automobile searches where warrants to search the vehicle proved defective, but where the officers had probable cause to search the vehicle. *State v. Smith,* 113 N.J.Super. 120, 273 A.2d 68 (1971); *State v.*

*McRae,* 255 S.C. 287, 178 S.E.2d 666 (1971); *State v. McMillan,* 206 Kan. 3, 476 P.2d 612 (1970).

In determining whether there was probable cause to support the issuance of the warrant, we, like the county judge, must rely on the materials contained within the four corners of the affidavit. *People v. Brethauer,* 174 Colo. 29, 482 P.2d 369 (1971); *People v. Baird,* 172 Colo. 112, 470 P.2d 20 (1970); *Hernandez v. People,* 153 Colo. 316, 385 P.2d 996 (1963). If, upon cross-examination by defense counsel, it appears that the affiant included statements in the affidavit known to him to be false, they must be stricken, and they may not be considered in determining whether the affidavit will support the warrant that was issued. However, if the material in the affidavit is stated to be or appears to be hearsay information obtained from an informant or other person, and the information turns out to be incorrect, we will not use hindsight as a test to determine whether the search warrant should or should not have been issued. The law is clear that a search warrant may be based on hearsay, as long as a substantial basis for crediting the hearsay exists. *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).; *People v. Brethauer, supra.*

None of the errors alleged, when stricken, rob the affidavit of facts which establish probable cause, and consequently, they are not fatal, as in *United States v. Roth,* 391 F.2d 507 (7th Cir. 1967). Rather, the errors asserted are merely technical, and as such, they are not to be looked to in determining the sufficiency of the warrant. *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). We, therefore, affirm the trial courts' rulings on the motions to suppress.

Our holding in this case is not to be construed as a license for law enforcement officers to misstate facts in order to obtain a warrant. In the instant case, the police report was presented to the complaint deputy in

the district attorney's office, and he prepared the affidavit for the signature of the police officer. The errors complained of should have been corrected by the complaint deputy and should have been noticed by the police officer, prior to the time that he signed the affidavit. The errors do not cause the affidavit to be emasculated of efficacy, however, and they are not cause for reversal.

■■ On the basis of *Chambers v. Maroney, supra,* we further hold that under the circumstances of this case, the search of the car could have been made without a warrant. In the *Chambers* case, as here, the search that produced the incriminating evidence was made at the police station some time after the arrest and was not justified as a search incident to an arrest. *Dyke v. Taylor Implement Manufacturing Co., supra; Preston v. United States, supra.* Nonetheless, the Court upheld the search on the grounds that warrantless searches are permissible where police officers are dealing with a mobile vehicle, and there is probable cause to believe that evidence of crime is concealed therein. *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The Court, in *Chambers v. Maroney, supra,* stated:

"For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.

"On the facts before us, the blue station wagon could have been searched on the spot when it was stopped since there was probable cause to search and it was a fleeting target for a search. The probable-cause factor still obtained at the station house and so did the mobility of the car unless the Fourth Amendment permits a warrantless seizure of the car and the denial of its use to anyone until a warrant is secured. In that event there is little to choose in terms of practical consequences between an

immediate search without a warrant and the car's immobilization until a warrant is obtained.[10] . . ."

Although the Court recognized that as a general rule, it has required the judgment of a magistrate on the probable cause issue and the issuance of a warrant before a search is made, it cited *Carroll v. United States, supra,* as authority for the proposition that automobiles and other conveyances may be searched without a warrant in circumstances which would not justify a warrantless search of a house or office. It also noted that the circumstances furnishing probable cause to search an automobile for particular articles are most often unforeseeable. Moreover, it found the opportunity to search in such instances fleeting, since a car is readily moveable. It, therefore, held that "[o]nly in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization for a search." *Chambers v. Maroney, supra. See also, People v. Mojo,* 173 Colo. 422, 480 P.2d 571 (1971).

Here, as in the *Chambers* case, the police officers were dealing with a mobile vehicle and had probable cause to believe that evidence of crime was concealed in the vehicle.

Rulings affirmed.

---

[10]"It was not unreasonable in this case to take the car to the station house. All occupants in the car were arrested in a dark parking lot in the middle of the night. A careful search at that point was impractical and perhaps not safe for the officers, and it would serve the owner's convenience and the safety of his car to have the vehicle and the keys together at the station house."