## No. 28031

## The People of the State of Colorado v. Charles Hampton and Angelo Horatio Macias

(587 P.2d 275)

Decided November 13, 1978.

Robert L. Russel, District Attorney, Jon C. Thomas, Deputy, for plaintiff-appellant.

John A. Purvis, Acting State Public Defender, Michael J. Wood, Deputy, for defendant-appellee Charles Hampton.

Montano & Encinas, Duane Montano; Vincent Franco, for defendant-appellee Angelo Horatio Macias.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

This interlocutory appeal was taken by the prosecution after the trial court suppressed evidence obtained in the course of a search of a 1966 Ford Galaxy which was used in an attempted robbery. We reverse the ruling of the trial court and remand for further proceedings.

The same *modi operandi* were used in committing a series of restaurant robberies along the front range. In all of the robberies, the individuals wore gloves and knit ski hats pulled down over their faces. Charles Hampton became the focus of the investigation and was kept under police surveillance for a period of time prior to the night in issue.

On August 22, 1977, the Colorado Springs police department received word that Denver police officers were conducting a moving surveillance of Hampton, who was driving a 1966 Ford toward Colorado Springs. Victor Anaya was a passenger in the car. Hampton's car was joined in Denver by a second car, a Volkswagen. When Hampton reached Colorado Springs, officers of its police department joined in following Hampton and the second car. Police followed both cars to a Colorado Springs motel, where Angelo Macias, the driver of the Volkswagen, obtained a room for his female companion and joined Hampton in the Ford.

Hampton, Anaya, and Macias then left the motel in the Ford. While under police surveillance, they parked the Ford near the Mr. Steak restaurant in Colorado Springs. The three men were observed putting on gloves and ski masks. At approximately 10:00 p.m., the trio attempted to enter the back door of the Mr. Steak restaurant. A number of police officers were hidden at various locations around the restaurant in the belief that a robbery was about to occur.

Police Officer Baldwin thought the trio had discovered the stake-out and left his cover and shouted, "Police. Freeze." Immediately, one of the suspects raised his arm as if to shoot, and Officer Baldwin fired at him.

Other officers also fired at the trio when they endeavored to escape. Anaya ran down the alley behind the restaurant and was shot and killed. Hampton and Macias managed to elude the police.

A search of the area near the back door produced a bag containing a pistol, together with two other pistols. Within five minutes after the aborted robbery, the police returned to the motel where the Volkswagen was parked, and other officers located the Ford Galaxy parked on the street near the Mr. Steak restaurant with a key in the ignition.

Both the motel and the automobiles were kept under police surveillance so that an arrest could be made if either Hampton or Macias returned to the motel or to either of the automobiles. While the police were at the motel, the female companion of Macias opened the motel door and was confronted by a detective who asked her to step outside. She looked backwards into the motel room and started to step back inside when the police forced the door open. Neither Hampton nor Macias was inside the motel room, but a .22 caliber pistol was in plain view and a sawed-off shotgun wrapped in a towel was found in the motel room.

Approximately five hours later, the police seized the Ford Galaxy and the Volkswagen. The defendants were not apprehended until the following day. Hampton was found not far from the Mr. Steak restaurant hiding under the hood of an automobile which had had the engine removed for repairs. Blood stains were found on a fence near the Mr. Steak restaurant, and Macias was traced to Denver and found with a possible gunshot wound. Macias' blood type matched the blood found on the fence.

With Anaya dead and both Hampton and Macias in custody, and long after both the Volkswagen and the 1966 Ford Galaxy had been impounded, the police obtained a search warrant. Some of the incriminating items seized in the search are described in the inventory which accompanied the return on the search warrant as:

One Ithaca model 37 Pump 20 gauge shotgun.

One German-made .22 caliber revolver with a 2-1/2 inch barrel.

One bar type nail puller.

One 20 inch impact tool.

One duffle bag containing: "a length of wire with two clips, one wire cutter, one pliers, one channel lock, one container of strapping tape, three blue handkerchiefs, one piece of blue nylon, three stocking hats, one ski mask, one brown glove, one pair of tan leather gloves, one pair of green cloth gloves, one black wig, two hack saw blades, Colorado passenger tags (KL 2342 - 1977), Colorado truck tags (JY 6376 - 1977), one purple and white shirt, one black nylon coat with hood, eight rounds of .32 caliber short ammunition, six rounds of .32 caliber long ammunition, two rounds of 20 gauge 2 buckshot, and an assortment of screw and lag bolts."

One box of 25 rounds of 20 gauge shot shell.

At the suppression hearing, defense counsel asserted that the police officer who signed the affidavit in support of that warrant had included information which was erroneous.

■ In this case, exigent circumstances justifying a warrantless search were originally present, because both Hampton and Macias were at large after the robbery attempt was aborted, and both cars could have been used for escape purposes. The Ford Galaxy was left in a public place with a key in the ignition, and there was no way for the police to prevent the defendants from obtaining weapons from the car or using the car as an escape vehicle unless the vehicles were taken into custody. Initially, a warrantless search could have been made.

"For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.

"On the facts before us, the blue stationwagon could have been searched on the spot when it was stopped since there was probable cause to search and it was a fleeting target for the search. The probable cause factor still obtained at the station house and so did the mobility of the car unless the Fourth Amendment permits a warrantless seizure of the car and the denial of its use to anyone until a warrant is secured. In that event there is little to choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained." *Chambers v. Maroney,* 399 U.S. 42, 52, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

However, at the time the search actually occurred, a warrant had been issued, the police were aware that both Hampton and Macias were in custody, and more than forty hours had expired since the initial seizure. As the trial judge found, at the time the vehicles were searched, all exigent circumstances had dissipated. Since it was a stale search, as it has been termed by the Supreme Court of the United States in *Michigan v. Tyler,* _____U.S._____, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978), a warrant was required.

To support the claim that there was probable cause to issue the warrant, the affidavit accompanying the application contained the statement that Bryan H. Tanner, the manager of the Lakewood Mr. Steak restaurant, had given a description of the robbers which tied the defendants to a robbery of that restaurant. Based on the affidavit, a warrant was issued, and the vehicles were searched.

The trial court granted a motion to suppress after a full hearing. *People v. Lorio,* 190 Colo. 373, 546 P.2d 1254 (1976); *People v. Arnold,* 186 Colo. 372, 527 P.2d 806 (1974); *Franks v. Delaware,*

438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). At the suppression hearing, the officer who provided the information in the affidavit acknowledged that he had not received the descriptions contained in the affidavit from the manager of the Mr. Steak restaurant and admitted that he could not account for his error. Accordingly, the trial court ordered that Tanner's name be stricken from the affidavit.

The trial court recognized the two-pronged requirement of the *Aguilar-Spinelli*[1] test and granted the defendants' motion to strike the descriptions from the affidavit. The trial court then ruled that, once the descriptions were stricken, the affidavit was insufficient on its face to permit the issuing magistrate to make an independent determination that probable cause existed to search the car. *People v. Brethauer,* 174 Colo. 29, 482 P.2d 369 (1971).

When a statement in an affidavit is not based on the personal knowledge of the affiant, but is based on information supplied by another, such as an informant, two requirements must be met if the constitutional demands of the Fourth Amendment are to be satisfied: The affidavit must set forth those underlying facts and circumstances which will allow the magistrate to independently arrive at the conclusion that there is probable cause to grant the warrant and which support the affiant's contention that the information is reliable and credible. When Tanner's name was stricken from the affidavit, there was no longer sufficient underlying facts and circumstances to support the affiant's contention that the information supposedly supplied by Tanner was reliable. *People v. Jackson,* 189 Colo. 316, 543 P.2d 705, 707 (1975).

▮ Since the information supplied by the affiant which supported the issuance of the search warrant was false, the trial court had no alternative but to strike the admittedly erroneous information which the affiant supplied. *People v. Woods,* 175 Colo. 34, 38, 485 P.2d 491 (1971).

However, we reverse the ruling of the trial court suppressing the evidence seized pursuant to the warrant. We do not agree with the trial court's conclusion that, once the descriptions erroneously attributed to Mr. Tanner are stricken, the affidavit no longer contains sufficient facts to allow the issuing magistrate to draw an independent conclusion that probable cause existed to justify the issuance of a warrant to search the 1966 Ford.

▮ The fact that some portions of an affidavit are erroneous does not require the issuing magistrate to ignore the other information supplied by the affidavit. *People v. Malone,* 175 Colo. 31, 485 P.2d 499 (1971). In this case, affidavits were prepared and warrants were issued on August 23

---

[1] *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

and August 24, 1977. The search warrant issued on August 23, is not properly before us for review and was returned unexecuted. The affidavits supporting both warrants reflect a *bona fide* effort by the police to comply with the warrant requirements of the Fourth Amendment. *See Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

The August 24, 1977, affidavit contained information which was based upon the affiant police officer's personal observations, as well as on information supplied by fellow officers. The details of the police surveillance which led to the stake-out of the Mr. Steak restaurant were set forth in the affidavit, and the facts recited in this opinion reflect those contained in the affidavit once the erroneously attributed descriptions were stricken.

The affidavit established that the affiant followed the Volkswagen driven by Macias to the motel and saw Macias enter the 1966 Ford Galaxy that was occupied by Hampton and Anaya. Hampton was known by the affiant to be the driver of the car, and in the affidavit the affiant presented information supplied by fellow officers which related every move made by Hampton from the commencement of the surveillance to the attempted robbery. The affidavit contains information which indicated that Hampton, Macias, and Anaya left the 1966 Ford Galaxy, donned gloves, pulled knit ski hats over their faces, and approached the rear entrance to the restaurant. Seconds later, the affiant heard gunshots and saw Anaya fall from police gunfire. A fellow officer later searched the scene of the crime and found three .38 caliber revolvers.

The 1966 Ford Galaxy was the car occupied by Hampton, Macias, and Anaya when they left the motel in Colorado Springs and drove to the Mr. Steak restaurant. Probable cause existed to search the 1966 Ford Galaxy, based upon the facts contained in the affidavit apart from those stricken by the trial judge.

Accordingly, we reverse the ruling of the trial judge and remand for further proceedings not inconsistent with this opinion.