**The PEOPLE of the State of Colorado,
Plaintiff-Appellant,**

v.

**Shawn P. DAILEY, Defendant-Appellee.**

No. 81SA389.

Supreme Court of Colorado,
En Banc.

Jan. 25, 1982.

Dale Tooley, Dist. Atty., Brooke Wunnicke, Chief Appellate Deputy Dist. Atty., Denver, for plaintiff-appellant.

1. The trial court also suppressed certain statements made by the defendant. That ruling was not appealed.

Bruce P. Fierst, Denver, for defendant-appellee.

LOHR, Justice.

The defendant, Shawn P. Dailey, is charged in Denver District Court with possession of the narcotic drug cocaine in violation of section 12–22–302, C.R.S.1973 (1978 Repl. Vol. 5). In this interlocutory appeal under C.A.R. 4.1, the prosecution seeks reversal of the trial court's ruling granting the defendant's motion to suppress physical evidence seized during a search of his residence pursuant to a warrant. The prosecution also asks us to overturn the trial court's order granting the defendant's motion for disclosure of the identity of a confidential informant.[1] We conclude that the trial judge applied an improper standard in ruling on the suppression motion and reverse that ruling and remand the case for further proceedings. We affirm the order requiring that the prosecution disclose the identity of the confidential informant.

On May 12, 1981, Denver detective Mario P. Luchetta executed an affidavit for search warrant before a Denver County Court judge, who then issued a warrant authorizing the search of 776 Marion Street in Denver for narcotics and related items. The affidavit stated, in pertinent part:[2]

I, Det. Mario Luchetta presently assigned to the Vice/Drug Control Bureau of the Denver Police Dept. received information from a previous reliable confidential informant whose information has proven reliable on at least two recent past prior occasions which resulted in the seizure of Cocaine, and arrests of parties with the contriband, and cases which were filed in Denver District Court and whose information has never proven unreliable.

Your affiants informant contacted your affiant between the dates of 5–10–81, and 5–12–81 and stated that he was present in the premises of 776 Marion st. during this period of time and observed a Caucasion female known to him as Carol

2. All spelling and punctuation are as they appear in the original affidavit.

Anderson with several folded sno-seal papers of Cocaine which Carol stated she was selling for $50.00 for the smaller ones and $100.00 for the larger ones. The informant further stated that he observed the Cocaine in the front-room area of the residence. The informant further stated that Carol also worked at Ricks Cafe and sold Cocaine from the Bar also. The informant further stated that Carol lived in a Duplex at 776 Marion st. and that the residence was a duplex with grey brick and a red tile roof.

The informant further stated that he recognized the white powder in the papers to be Cocaine as he the Informant has observed Cocaine on several occasions within his past.

Your affiant and his partner conducted a sporadic surveillance of 776 Marion st. and observed the premises to be a Duplex with grey brick and a red tile roof. Your affiant also received information from Det. Barnhill of the Vice/Drug Control Bureau who stated he had received information in the past that Carol Anderson was dealing Cocaine from Ricks Cafe.

Upon receiving the warrant, Luchetta and other Denver police officers searched the 776 Marion Street residence and seized certain property, including suspected cocaine. The defendant was later arrested and charged with possession of narcotics. He pleaded not guilty, and a trial was scheduled for August 31, 1981.

The defendant moved to suppress the material seized, and separately moved to require the prosecution to disclose the identity of the confidential informant referred to in the affidavit for search warrant. A hearing on the motions was scheduled for August 5. At the requests of the prosecution, the hearing was continued three times because detective Luchetta was unavailable. On August 31, the day set for trial, the prosecution again requested that the suppression hearing be continued or held open for a day to obtain the detective's presence. The trial court denied this request, but did permit the use of a transcript of the detective's testimony previously given at the preliminary hearing in the case. The affidavit

for search warrant, signed by Luchetta, also was received in evidence.

At the suppression hearing, Carol Anderson testified that, although she previously resided at 776 Marion Street with the defendant, she moved on May 1 and was never on the premises from May 10 to May 12, the period in which Luchetta's affidavit stated that the confidential informant reported seeing her there and hearing her make statements about selling cocaine. In support of Anderson's testimony, the defendant presented in evidence a lease-rental agreement reflecting that Anderson became a co-lessee of different residential premises for a term beginning May 1, 1981.

The trial court found from this evidence "that Carol Anderson did not reside in the premises between May 10th of 1981 and May 12th of 1981, and was not present in the premises during that time," and that "the issue is raised as to whether the confidential informant could have been present in those premises and had conversations and indeed offers of drug dealings with Ms. Anderson." The trial court concluded that the information "with respect to the presence of the confidential informant and Ms. Anderson" should be excised from the affidavit and that when this was done the remaining statements did not establish probable cause upon which a search warrant could be based. Finding no basis for a warrantless search, the court then granted the motion to suppress physical evidence. The trial court went on to conclude that its findings raised a question about Luchetta's credibility and ordered that the identity of the confidential informant be disclosed.

On this appeal the prosecution contends that the trial court erred in considering extrinsic evidence to determine the truth of the statements in the affidavit for search warrant, and abused its discretion in ordering the disclosure of the identity of the confidential informant. The defendant asserts that we need not reach the question of impeachment of the warrant affidavit by extrinsic evidence because that affidavit is insufficient on its face.

We conclude that the trial court correctly required disclosure of the identity of the confidential informant. While we determine that the warrant affidavit is facially sufficient, we hold that in considering extrinsic evidence as to the accuracy of the affidavit the trial court applied the wrong standard and omitted necessary findings. A remand for further proceedings accordingly will be necessary to determine whether the physical evidence should be suppressed.

## I.

Preliminarily, we note the prosecution's claim that the trial court erred in denying the People's motion for a continuance of the suppression hearing to obtain the presence of officer Luchetta. This issue need not be resolved because of our holding that further proceedings are necessary on the suppression motion. The prosecution should be given the opportunity to present officer Luchetta's testimony in the course of those proceedings.[3]

## II.

## A.

We first address the defendant's contention that the affidavit for search warrant was insufficient on its face because it did not contain enough information to support a conclusion that the confidential informant was credible.

■ It is well established that an affidavit for a search warrant based on statements of an informant must meet a two-pronged test for sufficiency. First, it must contain facts from which the judge who is requested to issue the warrant can determine independently whether the informant has an adequate basis for his allegations that evidence of crime will be found at the place sought to be searched. Second, it must set forth sufficient information to enable the judge to determine whether the informant is credible or some other basis exists to believe that the information is reliable. *Spinelli v. United States,* 393 U.S.

410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *People v. Stoppel,* Colo., 637 P.2d 384 (1981).

■ Here, the informant's knowledge was allegedly obtained by personal observations of cocaine in the premises sought to be searched. This adequately established the informant's basis of knowledge and satisfies the first prong of the sufficiency test. *E.g., People v. Stoppel, supra; People v. Arnold,* 186 Colo. 372, 527 P.2d 806 (1974). The defendant does not dispute this.

The information furnished in the affidavit in support of the informant's credibility is challenged, however, as insufficiently specific to enable the judge to evaluate the informant's credibility. Affiant Luchetta stated that the informant's "information has proven reliable on at least two recent past prior occasions which resulted in the seizure of Cocaine, and arrests of parties with the contriband (sic), and cases which were filed in Denver District Court and whose information has never proven unreliable."

We have found similar but less specific statements to be adequate to establish an informant's credibility. In *People v. Arnold, supra,* we held that an affidavit which supported the informant's credibility by stating that he was a "previously reliable confidential informant whose information has resulted in narcotics arrest and seizures on at least two past occasions" to be sufficient. *Id.,* 186 Colo. at 376, 527 P.2d at 808. We held a statement substantially identical to that in *People v. Arnold* to be sufficient to establish an informer's credibility in *People v. Ward,* 181 Colo. 246, 508 P.2d 1257 (1973). To the same effect is *People v. Schmidt,* 172 Colo. 285, 473 P.2d 698 (1970).

■ We have drawn the line, however, where the affidavit reflected only the police officer's conclusion that an informant was reliable, and failed to provide a factual basis enabling an independent and neutral

3. The prosecution will be responsible for obtaining officer Luchetta's presence at the hearing.

judicial determination of credibility. This is demonstrated by a comparison of the above cases with *People v. Peschong*, 181 Colo. 29, 506 P.2d 1232 (1973), where we held that a statement by a police officer-affiant that he had known the informant "for approximately 2 years, and said informant has given reliable information on at least 3 prior occasions," was insufficiently specific to satisfy the second prong of the *Aguilar-Spinelli* test. 181 Colo. at 31, 506 P.2d at 1233. We noted that it was not unreasonable to expect the affidavit to indicate the nature of the information previously supplied by the informant and whether such information had resulted in an arrest or conviction or some other disposition indicating the reliability of the informant. Similarly, we have held that a conclusory bald statement that the informant was known to be reliable is clearly insufficient. *Smaldone v. People*, 173 Colo. 385, 479 P.2d 973 (1971); *People v. Baird*, 172 Colo. 112, 470 P.2d 20 (1970); *see People v. Brethauer*, 174 Colo. 29, 482 P.2d 369 (1971).

■ In the instant case the affidavit reflects that at least twice in the recent past the informant supplied accurate data as to the presence of cocaine, the very drug which the informant purportedly identified on the premises for which the search warrant was sought. It also reflects that his information has never proved unreliable. We conclude that the affidavit before us satisfied the second prong of the sufficiency test. *People v. Arnold, supra; People v. Ward, supra; People v. Schmidt, supra.* Therefore, the defendant's challenge to the facial sufficiency of the affidavit is not well taken.

#### B.

■ We next consider whether the trial court acted properly in permitting the defendant to challenge the accuracy of the statements in the affidavit for the purpose of destroying the factual foundation for a determination of probable cause.

The prosecution contends that the trial court should have restricted its inquiry to the materials contained within the four corners of the affidavit, citing *People v. Lindholm*, 197 Colo. 270, 591 P.2d 1032 (1979); *People v. Woods*, 175 Colo. 34, 485 P.2d 491 (1971); and *People v. Brethauer*, 174 Colo. 29, 482 P.2d 369 (1971). The prosecution's reliance on those cases is misplaced. *People v. Brethauer, supra*, was concerned with the facial sufficiency of the warrant affidavit to support the determination of probable cause. When the court stated that "the judge must look within the four corners of the affidavit to determine whether there are grounds for the issuance of a warrant," *People v. Brethauer, supra*, 174 Colo. at 39, 482 P.2d at 373–74, it was only repeating the well-established rule that the court could not consider additional information which the police might possess, but did not provide in support of issuance of the warrant. *See* 2 W. LaFave, *Search and Seizure* § 4.4 (1978). The court's statement of the "four corners" limitation in *People v. Lindholm, supra*, and *People v. Woods, supra*, was in the same context. While these cases prohibit the rehabilitation of a defective warrant by the introduction of additional evidence not contained in the warrant affidavit, they do not address the permissibility of a veracity challenge to an otherwise facially sufficient affidavit.

In fact, rather than prohibiting veracity challenges, our cases have repeatedly recognized the appropriateness of such inquiries, at least where the good faith of the police officer-affiant was explicitly or tacitly at issue. *People v. Hampton*, 196 Colo. 466, 587 P.2d 275 (1978), *overruled on other grounds, People v. Bannister*,[4] Colo., 619

---

4. *People v. Bannister, supra*, concerned the warrantless seizure of stolen merchandise from an automobile. The search of the auto and seizure of the evidence was prompted by the officer's observation of the contraband in plain view. This court originally held that the search and seizure was unconstitutional. *People v. Bannister*, Colo., 607 P.2d 987 (1980). That holding was reversed by the United States Supreme Court in *Colorado v. Bannister*, 449 U.S. 1, 101 S.Ct. 42, 66 L.Ed.2d 1 (1980). It was on remand that this court stated that *People v. Hampton, supra*, is overruled to the extent it is inconsistent with *Colorado v. Bannister, supra*. This subsequent limitation of *People v. Hampton* does not impair that portion of the holding relevant to the present case.

P.2d 71 (1980); *People v. Ellis*, 189 Colo. 242, 539 P.2d 132 (1975); *People v. Arnold, supra; People v. Malone*, 175 Colo. 31, 485 P.2d 499 (1971); *People v. Woods*, 175 Colo. 34, 485 P.2d 491 (1971).

When a statement in an affidavit is shown to be untrue, and known to the officer-affiant to be untrue, that statement has been stricken, and the sufficiency of the affidavit has been tested on the basis of the averments then remaining. *People v. Hampton, supra; People v. Ellis, supra; People v. Malone, supra; People v. Woods, supra.*

Nor is Colorado case law anomalous in this respect. The majority of courts now reject an absolute rule prohibiting veracity challenges to a warrant affidavit, and this trend has been fostered and approved by the commentators. *See Franks v. Delaware*, 438 U.S. 154, 168 n. 7, 176 App. B, 98 S.Ct. 2674, 2683 n. 7, 2687 App. B, 57 L.Ed.2d 667, 680 n. 7, 685 App. B; 2 *W. LaFave, Search and Seizure* § 4.4 (1978 and 1981 Pocket Part); ALI *Model Code of Pre-Arraignment Procedure* § SS 290.3(1) (Off. Draft 1975).

There are, however, a number of remaining questions in this developing area of the law that have been only partially resolved by our prior cases. Three of these questions raised by the present case are: (1) the preliminary showing necessary to warrant a veracity challenge hearing, (2) the consequences of demonstrating that an affidavit contains erroneous statements, and (3) the defendant's right to disclosure of an informant's identity in connection with such a veracity challenge. To the extent necessitated by the instant appeal, we turn to a resolution of those questions. Issues (1) and (2) are addressed in the remainder of this section and issue (3) is addressed in the final section of this opinion.

Shortly before our decision in *People v. Hampton, supra*, the United States Supreme Court issued its opinion in *Franks v. Delaware, supra*, establishing Fourth Amendment standards and procedures with respect to a challenge to the accuracy of an affidavit supporting a search warrant. There, the Court held:

[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

438 U.S. at 155–56, 98 S.Ct. at 2676, 57 L.Ed.2d at 672; *see Rugendorf v. United States*, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964). Except that we have permitted veracity challenges without requiring a substantial preliminary showing of intentional or reckless falsity, there is nothing in our prior opinions at variance with the standards and procedures set forth in *Franks v. Delaware, supra; People v. Ellis, supra; People v. Arnold, supra; People v. Malone, supra; People v. Woods, supra.*

■ *Franks v. Delaware, supra*, prescribes the circumstances under which a veracity hearing must be held in order to comply with the Fourth Amendment. It does not prohibit such hearings based on lesser threshold showings, nor of course, does it treat the question whether our state constitution requires such a hearing upon some lesser showing of probable merit. *See Colo.Const.* Art. II, § 7.[5] We consider it appropriate that the defendant show some

---

5. In our previous cases, we have never explicitly considered the extent to which the federal and state constitutions mandate a hearing to resolve veracity challenges to a warrant affidavit.

good faith basis in fact to question the accuracy of an affidavit for search warrant before a veracity hearing need be held. Additionally, fairness to the prosecution requires that the motion to suppress specify which statements in the affidavit will be challenged, so that the prosecution can prepare for the suppression hearing. Consequently, as conditions to a veracity hearing testing the truth of averments contained in a warrant affidavit, under our state law we shall require that a motion to suppress (1) be supported by one or more affidavits reflecting a good faith basis for the challenge and (2) contain a specification of the precise statements challenged. We limit the requirements which we announce today, however, to prospective application. As we have not required a preliminary showing of incorrect statements as a condition to a veracity hearing in the past, we conclude that the absence of this showing should not be used to preclude the defendant's challenge to the correctness of the affidavit in the present case.

Here, the trial court found that Carol Anderson was not at 776 Marion St. at any time between May 10 and 12, 1981. It necessarily follows that the court found the statements in the affidavit incorrect to the extent they concerned the informant's observation of Ms. Anderson on those premises and the statements she supposedly made at that time.[6] The trial court noted that these erroneous averments raised questions as to the credibility of both the informant and the affiant. It did not resolve these issues, concluding that the false statements must be stricken from the affidavit and that when this was done the affidavit did not establish probable cause to support the warrant. Based on this same reasoning, the trial court ordered disclosure of the identity of the confidential informant, but did not

await the informant's testimony before entering an order suppressing the evidence seized as a result of the search.

We do not agree with the trial court's assumption that all false information in an affidavit for search warrant must be stricken, without regard to the source of the error, before determining its sufficiency to establish probable cause. If the error resulted from perjury or reckless disregard for the truth on the part of the affiant-officer, the Fourth Amendment requires that the incorrect statements be stricken. *Franks v. Delaware, supra.* The errors, however, could have resulted from the informant's perjury or reckless disregard for the truth, or from the negligence or good faith mistake of either the officer or the informant. Other sources of error can be imagined. We consider it inadvisable to attempt to develop the consequences which would follow under the United States and Colorado Constitutions from each of the various possibilities as to the origin of the error. *See generally,* 2 *W. LaFave, Search and Seizure,* § 4.4 (1978 and 1981 Pocket Part). Instead, we elect to remand this matter to the trial court for a finding as to the reason the factual statements are incorrect.

If the source of the error is intentional falsehood or reckless disregard for the truth on the part of the officer-affiant, the statements must be stricken from the affidavit, and as the remaining statements are insufficient to establish probable cause, the motion to suppress must be granted. *Franks v. Delaware, supra.*[7] If, on the other hand, the error has some other source we leave to the trial court the initial resolution of the consequences, taking guidance from existing authority. *See generally, Franks v. Delaware, supra; People v. Ellis, supra;*

---

**6.** Although the court says only that the finding that Anderson was not on the premises at the time stated in the affidavit raised the issue "whether the confidential informant could have been present in those premises and had conversations and indeed offers of drug dealings with Ms. Anderson [at the time stated in the affidavit]," the trial court's finding necessarily means that the conversation and offers did not take place. It does not resolve whether the infor-

mant was on the premises during the period in question.

**7.** We need not now decide whether intentional falsehoods should void the warrant even if the other statements in the warrant affidavit are adequate to establish probable cause. *See* 2 *W. LaFave, Search and Seizure* § 4.4(c) (1978 and 1981 Pocket Part).

*People v. Arnold, supra; People v. Gable*, 184 Colo. 313, 520 P.2d 124 (1974); *People v. Malone, supra; People v. Woods, supra*; 2 *W. LaFave, Search and Seizure* § 4.4 (1978 and 1981 Pocket Part); ALI *Model Code of Pre-Arraignment Procedure* § SS 290.3 Commentary (Off. Draft 1975). In the interest of just resolution of this dispute, and especially because of the explanation of the appropriate standards contained in this opinion, the trial court should allow both parties the opportunity to present additional evidence on the motion to suppress physical evidence.

### III.

■ Finally, as the question of the propriety of requiring disclosure of the confidential informant is interwoven with the merits of the suppression issue, we elect to address it.[8]

■ As we have seen, the Fourth Amendment mandates excision of an erroneous statement in an affidavit for search warrant if the defendant can show by a preponderance of the evidence that the error in the affidavit for search warrant was caused by an officer-affiant's perjury or reckless disregard for the truth. *Franks v. Delaware, supra.*[9] In order to have a fair opportunity to carry this burden, where, as here, the affiant claims reliance on an unnamed informant, the defendant needs an

opportunity to inquire of the informant as to the information given by him to the officer and to develop background information bearing on whether the officer was reckless in relying on the informant as a source of information. Under these circumstances, if the defendant cannot learn the identity of the informant, he will be denied information essential to the merits of his suppression motion.[10]

■ We have recognized a privilege in the prosecution to withhold from disclosure to a defendant the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. *People v. Del Alamo*, Colo., 624 P.2d 1304 (1981); *People v. Korte*, 198 Colo. 474, 602 P.2d 2 (1979); *People v. Langford*, 191 Colo. 87, 550 P.2d 329 (1976); *People v. Marquez*, 190 Colo. 255, 546 P.2d 482 (1976). *Accord, McCray v. Illinois*, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). In *Roviaro*, the United States Supreme Court said:

> The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their

8. C.A.R. 4.1 limits the types of rulings from which interlocutory appeals can be taken. As relevant here, a ruling granting a defendant's pre-trial motion to suppress evidence is subject to interlocutory appeal. We have often stated that interlocutory appeals may not be employed to obtain pre-trial review of issues not covered by C.A.R. 4.1. *E.g., People v. Morgan*, Colo., 619 P.2d 64 (1980); *People v. Lott*, 197 Colo. 78, 589 P.2d 945 (1979); *People v. Morrison*, 196 Colo. 319, 583 P.2d 924 (1978). In the present case, we consider the ruling on disclosure of the confidential informant so intimately related to the suppression issue as to fall within the C.A.R. 4.1 interlocutory appeal authorization. *See People v. Morrison, supra; Cf. People v. Lott, supra* (validity of arrest may be considered on interlocutory appeal when resolution of that question is necessary to determine a suppression motion).

9. As noted by a commentator, refinements in the application of this burden of proof remain

to be developed. For example, it may be that once the defendant has carried his burden of showing falsity the prosecution should have the burden to show absence of intentional or reckless inclusion of the false statement by an officer-affiant. *See* 2 *W. LaFave, Search and Seizure* § 4.4(d) (1978 and 1981 Pocket Part).

10. The ALI Model Code of Pre-Arraignment Procedure is in accord. Recognizing the interrelation of a veracity challenge and informant disclosure, the Model Code places the burden on the defendant to show lack of good faith in the affiant's testimony, but requires that the identity of any informant relied upon by the affiant be disclosed unless the judge finds, among other things, that the motion to suppress can fairly be determined without divulgence of the informant's identity. ALI *Model Code of Pre-Arraignment Procedure* §§ SS 290.3(1)(b), 290.4 (Off. Draft 1975).

anonymity, encouraging them to perform that obligation.

353 U.S. at 59, 77 S.Ct. at 627, 1 L.Ed.2d at 644.

The privilege is not absolute, however, and must be confined in its application based on its underlying purpose. *Id.* In determining whether a disclosure is required in a particular case, a balancing test is to be applied. That test was described in *Roviaro v. United States, supra,* as follows:

We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

353 U.S. at 62, 77 S.Ct. at 628–29, 1 L.Ed.2d at 646. We have adopted that same test. *E.g., People v. Marquez, supra.* Although on several occasions we have enumerated some of the factors to be balanced in making the disclosure determination, the overriding consideration of fundamental fairness tips the balance in this case. As the United States Supreme Court said in *Roviaro v. United States, supra,* "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant

and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action." 353 U.S. at 60–61, 77 S.Ct. at 628, 1 L.Ed.2d at 645.

Whether the identity of a confidential informant should be disclosed is committed to the sound discretion of the trial court, *People v. Korte, supra.* The district court acted well within its discretion in ordering disclosure in this case.[11]

We reverse the ruling of the trial court suppressing the physical evidence, affirm the order requiring disclosure of the identity of the confidential informant, and remand this case to the trial court for further proceedings consistent with the views expressed in this opinion.

ROVIRA, J., does not participate.

---

**11.** We note, however, that a valuable third alternative exists in informant privilege cases. In addition to either ordering or denying disclosure of the informant's identity, the court has the alternative of conducting an *in camera* hearing at which the prosecution is required to present the informant for judicial interrogation. *See People v. Langford, supra.* If such a hearing is ordered, the defendant should have an opportunity to submit questions he desires the judge to ask at that proceeding. A summary report of such proceedings should be made available to the defendant, and a transcript of the proceeding should be sealed and preserved for use in case of appellate review. *See* 1 W. LaFave, *Search and Seizure* § 3.3(g) (1978). The *in camera* hearing should not be viewed as a substitute for disclosure in all cases, for we rely upon an adversarial system of justice, and

an *ex parte* proceeding can never supply the full equivalent of independent research and direct confrontation by the accused. However, in proper cases, such a hearing can avoid an otherwise irreconcilable conflict between the legitimate need for informant anonymity and the right of the defendant to be free of unfounded infringements of his privacy and liberty. Courts and commentators have expressed general approval of the *in camera* hearing device in this context, and we believe that its use should be fostered. *E.g., United States v. Alexander,* 559 F.2d 1339 (5th Cir. 1977); *United States v. Moore,* 522 F.2d 1068 (9th Cir. 1975); *United States v. Danesi,* 342 F.Supp. 889 (D.Conn.1972); 1 W. LaFave, *Search and Seizure* § 3.3(g) (1978 and 1981 Pocket Part); ALI *Model Code of Pre-Arraignment Procedure* § SS 290.4 (Off. Draft 1975).