The **PEOPLE** of the State of Colorado,
Plaintiff–Appellant,

v.

**Brian Karl YOUNG,**
Defendant–Appellee.

No. 89SA37.

Supreme Court of Colorado,
En Banc.

Feb. 12, 1990.

Alexander M. Hunter, Dist. Atty. and David L. Rockwell, Deputy Dist. Atty., Boulder, for plaintiff-appellant.

David F. Vela, Colorado State Public Defender and Seth J. Benezra, Deputy State

Public Defender, Boulder, for defendant-appellee.

Justice LOHR delivered the Opinion of the Court.

The prosecution has filed this interlocutory appeal pursuant to C.A.R. 4.1 challenging an order of the Boulder County District Court suppressing physical evidence found while searching the defendant's home. The trial court concluded that the affidavit upon which the search warrant was based contained a false statement that was negligently included by the affiant. The trial court excised the statement from the affidavit, concluded that the affidavit no longer established probable cause for the search and, therefore, ordered the suppression of evidence seized pursuant to the warrant. We reverse the trial court's order and remand the case for further proceedings.

I.

On February 24, 1988, Boulder County sheriff's officer Mark George stopped Brian Karl Young, the defendant, for a traffic violation. Officer George then conducted a routine check by computer and learned of an outstanding warrant for Brian J. Young, a man closely matching the defendant's characteristics. Officer George arrested Young on this warrant.[1]

Subsequent to the arrest, Deputy Sheriff Dunphy initiated steps at the site of the arrest to impound Young's car. Dunphy entered the car to read the odometer for the impound report and immediately noticed a strong, pungent odor that he believed to be ether. Dunphy then opened the car's trunk in search of the odor's source. Upon opening the trunk, Dunphy noticed that the odor was stronger, and he observed a semi-transparent plastic container about eighteen inches tall and twelve inches in diameter, filled to a depth of five to six inches with an amber colored liquid.

Dunphy became concerned about what he believed to be the volatile nature of the liquid and the hazard that would result from towing the car to the police lot with this container in the trunk. When the wrecker arrived, Dunphy asked its driver to smell the odor in the trunk and the driver stated that it smelled like ether.[2] Dunphy then told the driver not to tow the car and he called his supervisor. The supervisor told Dunphy to notify Detective Sergeant Dale Goetz, an officer who had experience and training with explosives, and request that Goetz come to the scene.

Upon the arrival of Detective Goetz, Dunphy opened the trunk and Goetz immediately smelled what he believed to be ether. He noticed the container holding amber colored liquid and saw that some crystals had formed around the container's cap. He found those observations consistent with his belief that the liquid in the container was old ether. He bent into the trunk to smell the container and detected only the odor of ether. Detective Goetz then removed the container from the trunk, wrapped it in a bomb blanket and took it to a high explosives bunker.

Suspecting that Young might be involved in methamphetamine manufacture,[3] the officers sought a warrant to search Young's home. The affidavit submitted to obtain the warrant contained references to the odor of ether detected by the officers[4] and

---

1. The validity of the arrest is not an issue in this case.

2. Dunphy and the wrecker truck driver both drew on their experience with starting fluids containing ether in arriving at their respective opinions that ether was the source of the odor.

3. The affidavit contained other information about Young that is not relevant to the issues in this case.

4. The affidavit stated:

> While [assisting officer George in impounding the car, Dunphy] smelled what appeared to be the strong odor of ether from Mr. Young's car. Due to the nature of ether in that it is a very volatile and explosive substance used in the manufacture of methamphetamine, a controlled substance, Sgt. Dunphy told the affiant he opened the trunk of Mr. Young's vehicle as it appeared to him the odor was coming from the trunk. The trunk was opened to verify if in fact ether was in the trunk for officer and public safety considerations.

a container of ether found in the trunk of Young's car.[5] A search warrant was subsequently issued, Young's home was searched, and evidence of drug manufacturing and dog fighting was found. As a result, Young was charged with possession of a schedule II controlled substance with intent to manufacture and sell, § 18–18–105, 8B C.R.S. (1986), two counts of attempt to manufacture a schedule II controlled substance, § 18–18–105, 8B C.R.S. (1986), and three counts of dog fighting, § 18–9–204, 8B C.R.S. (1986).

The substance in the container that was discovered in Young's trunk was subsequently tested by the Colorado Bureau of Investigation and found to be isopropanol, or rubbing alcohol. Young, therefore, filed a motion to suppress the evidence obtained in the search on the basis that Detective Goetz "intentionally and/or recklessly" misled the court. The trial court found that the detective truly believed that the container held ether but that he did not use reasonable care in reaching that conclusion. As a result, false statements were included in the affidavit for a search warrant. The trial court therefore excised those statements from the affidavit, found that without them there was no longer probable cause for the search,[6] and suppressed the evidence obtained in the search.

## II.

In *People v. Dailey*, 639 P.2d 1068 (Colo. 1982), we held that a veracity hearing to test the truth of averments in a warrant affidavit is required if the motion to suppress specifies the statements challenged and is supported by at least one affidavit reflecting a good faith basis for the challenge. *Id.* at 1075.[7] In this case, there is no question that Young's motion to suppress met these requirements, and a veracity hearing was properly held.

■ At a veracity hearing, there are three issues that must be addressed in sequence in the trial court's analysis: first, whether the warrant affidavit contains false statements; second, whether the false statements must be excised; and third, if the statements are excised, whether the remaining statements establish probable cause to authorize the search. *Dailey*, 639 P.2d at 1075.

The first issue we must consider is whether the warrant affidavit contained false statements. The affidavit stated that "[i]n Sgt. Goetz's opinion the bottle contained ether in an amount of about one gallon." The prosecution stipulated that the container, in fact, contained isopropanol, not ether.

■ The trial court concluded that this statement of Detective Goetz's opinion was equivalent to a factual statement that the bottle contained ether. We believe it more correct to say that the statement is a representation that it was Detective Goetz's good faith opinion that the substance was ether. Other statements in the affidavit supply the basis for that opinion. We conclude, however, that for purposes of the falsity issue in a veracity hearing, if an

5. The affidavit stated:
 The affiant personally spoke with Sgt. Goetz who told me he examined the bottle found in Mr. Young's vehicle by Sgt. Dunphy. In Sgt. Goetz's opinion the bottle contained ether in an amount of about one gallon. Sgt. Goetz told me ether is a light volatile flammable liquid, that in a deteriorated state becomes a high explosive. Sgt. Goetz also told me the bottle had condensation dropplets [sic] on it, indicating the substance in the bottle and its contents had at one time been heated. As a result, Sgt. Goetz removed the bottle and placed it in a safe location.

6. The prosecution agreed in the trial court and on this appeal that the statements in the affidavit for search warrant identifying the substance

in the container as ether were essential to establish probable cause.

7. The federal constitutional standard is somewhat stricter. *See Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978) ("To mandate an evidentiary hearing. . . . [t]here must be allegations of deliberate falsehood or of reckless disregard for the truth, and these allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.").

opinion concerning the existence of a basic fact constituting part of the probable cause proves erroneous, the result is the same as if the underlying fact were incorrectly stated. Therefore, although it is not entirely accurate to say that a statement of opinion is identical to a representation that the opinion is correct, if the opinion proves incorrect the statement is "false" for the purpose of a veracity challenge to an affidavit for a warrant.

■ Next, we must determine whether the trial court properly struck from the affidavit the statement of opinion that the substance in the container was ether. We have held that all false information contained in warrant affidavits need not be stricken. *Dailey*, 639 P.2d at 1075. The source of the error is determinative. *Id.* If the affiant intentionally included false information, or did so with reckless disregard for the truth, the false statements must be stricken. *Id.*[8]

■ The trial court concluded that the police officers negligently included false statements in the warrant affidavit. Implicit in the court's findings is the determination that there was an odor of ether in the car but that the container was not its source. We have never held that mere negligence justifies the excision of false statements from a warrant affidavit and we find it unnecessary to address that issue here. We hold instead that the trial court erred in finding that the police officers acted negligently.

The trial court ruled:

The evidence in the case before the Court now is that the smell of Ether and the smell of Isoproponol [sic] are quite distinct and distinguishable and that is the Court's conclusion after smelling Exhibits 1 and 2 [tubes containing isopropanol and ether, respectively]. Because of that vast difference in smell, it seems to me that Sergeant Goetz used less than rea-

sonable care in ascertaining whether the substance in the bottle was Ether.

I want to focus on the substance in the bottle and the bottle being Ether because I think the whole thrust of the search warrant affidavit was that there was Ether in the bottle, and I think he used less than reasonable care in that regard because the facts are that these two substances have such distinct odors, so I think Detective Goetz did not use reasonable care in reaching his conclusion that this substance was Ether. I didn't hear anything in his testimony that suggested to me that it was dangerous for him to smell the leaking bottle and certainly if he could wrap it and carry it, he could lower his nose to smell it. So I don't think he used reasonable care in ascertaining whether or not this substance was Ether once it was removed from the car.

Although as a general matter trial court findings of fact are to be treated with deference, *People v. Cleburn*, 782 P.2d 784, 787 (Colo.1989), we have not hesitated to reverse trial court findings that are not supported by the evidence. *See, e.g., Wright v. Horse Creek Ranches*, 697 P.2d 384, 390 (Colo.1985). The trial court based its finding of negligence on two facts: first, that Detective Goetz did not smell the leaking bottle once it was removed from the car and, second, that the evidence did not demonstrate that it would have been dangerous for him to do so. We conclude, however, that the evidence presents no reason to suggest that Goetz should have sought to confirm his opinion that the container held ether.

Detective Goetz testified that while the container was in the trunk he bent into the trunk and attempted to smell any fumes coming out of the leaking container. Doing so, he detected only the smell of ether. Moreover, Detective Goetz observed characteristics of the liquid in the container that were consistent with ether and there-

---

**8.** In circumstances where the informant is not associated with law enforcement and the affiant is, it may be important whether the informant or the affiant is the source of the error. *See Dailey*, 639 P.2d at 1075. That is not the case

here, where the informants and the affiant all were police officers. In such a case, error by an informant should have the same consequence as error by an affiant.

fore reinforced his belief that the container held ether. The liquid was amber colored, the color of old ether. Crystals had begun to form where the liquid was exposed to oxygen, a property found in ether.

Detective Goetz testified that he did not open the container to smell its contents because he believed doing so would be extremely dangerous. Detective Goetz also testified that the only way he could safely open the container was to explode it. The record is filled with testimony confirming the dangerous properties of ether, particularly when it has begun to form crystals. Dr. Robert Lantz, an expert in the field of analytical chemistry, testified that ether is flammable and once crystals form, ether becomes even more dangerous because it is both shock and heat sensitive. Deputy Sheriff George Dunphy testified that he was concerned about the volatile and unstable nature of ether. Detective Goetz testified that ether is highly flammable and explosive, and it is particularly dangerous once crystals have formed.

Detective Goetz testified that after smelling ether and observing what he thought to be crystalized ether on the container he decided "that rather than do anything else with the container to just remove the container to a safe area to avoid any possibility of the container falling over or getting bumped or tampered with and causing an explosion."

The evidence does not support the trial court's finding that Detective Goetz was negligent in concluding that ether was the substance in the container. Detective Goetz's initial determination that the container held ether was reasonable and nothing in what he saw or smelled suggested that he should question that opinion or take further steps to verify it. Further, given Goetz's knowledge of the extremely dangerous nature of ether that has begun to crystalize, it must be concluded that he acted reasonably in wrapping the container in a bomb blanket and taking the container to an explosives bunker without pausing to make further observations and tests. Because we conclude that the trial court erred in ruling that the police negligently included false information in the warrant affidavit, we hold that the statements need not be excised from the affidavit.

### III.

Accordingly, we reverse the trial court's order suppressing evidence found pursuant to the search warrant issued for the defendant's home and remand the case for further proceedings consistent with this opinion.