**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**Michael Lee REED, Defendant–Appellee.**

**No. 02SA131.**

Supreme Court of Colorado, En Banc.

Oct. 21, 2002.

---

Stuart A. VanMeveren, District Attorney, J. Andrew Taylor, Deputy District Attorney, Fort Collins, Colorado, Attorneys for Plaintiff.

The Law Firm of Douglas S. Joffe, Douglas S. Joffe, Denver, Colorado, Attorneys for Defendant.

Justice MARTINEZ delivered the Opinion of the Court.

In this interlocutory appeal brought pursuant to section 16–12–102(2), 6 C.R.S. (2002) and C.A.R. 4.1, the People challenge the trial court's suppression of evidence seized while searching defendant Michael Reed's motel room and truck. The trial court concluded, based on testimony in a veracity hearing, that the affidavit upon which the search warrant was based contained false statements.

Upon excising some of the false information, the trial court ruled that the remaining affidavit did not support a finding of probable cause and suppressed evidence obtained during the execution of the search warrant. The court also found that the officer-affiant preparing the affidavit was fully aware or could have been aware of the true facts in this case and, therefore, held that the good-faith exception to the exclusionary rule did not apply. *See* § 16–3–308, 6 C.R.S. (2002) (codifying the good-faith exception in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)). We first hold that the trial court improperly excised information from the warrant affidavit. We then determine that the unexcised affidavit establishes probable cause for the issuance of a search warrant. Therefore, we reverse.

## I. Facts and Procedure

Following the seizure of components of a methamphetamine manufacturing lab and numerous documents detailing the manufacturing process, defendant Michael Reed was arrested and charged with conspiracy to manufacture methamphetamine, a schedule II controlled substance. § 18–18–405, 6 C.R.S. (2002). Reed moved to suppress the evidence because he claimed that the affidavit contained erroneous facts and failed to articulate probable cause for the search and seizure.

On November 6, 2001, Officer Pierick of the Larimer County Drug Task Force obtained a warrant authorizing the search of a motel room and vehicle for evidence relating to the possession and manufacture of any controlled substance. The affidavit in support of the warrant alleged that Reed possessed known precursors to methamphetamine including pseudoephedrine, ephedrine, and acetone. The affidavit stated that after inspecting Room 3 at the Loveland Motel, Loveland Officer Dutelle, based on his experience and training, concluded that Room 3 contained remnants of methamphetamine production. The affidavit also recited that Reed initially rented Room 3 in the Loveland Motel, but later moved to Room 12.

In addition, the affidavit described two other observations. First, Reed and Levi Ornelas, who was arrested for methamphetamine manufacturing in January 2001, were seen smoking outside Room 12 two days prior to the search. The affidavit noted that smoking outside is common practice for methamphetamine manufacturers to avoid igniting vapors associated with production. Second, the affidavit stated that on the day of the search, Reed was observed driving a truck into the Loveland Motel parking lot on his way to Room 12.

Once the warrant was signed Officer Pierick undertook the search and seized evidence related to methamphetamine production. Reed filed a motion to suppress the evidence based on two false statements in the affidavit. After a veracity hearing, the trial count found that both of the contested statements contained erroneous information. It is not entirely clear what part of those statements the court excised. After the court struck some information from the affidavit, it found that the remaining affidavit failed to establish probable cause and suppressed all evidence obtained during the search.

We first consider whether the trial court properly excised any information from the affidavit in support of the warrant. Upon concluding that information in the affidavit is not properly excised, we proceed to determine that probable cause for the search and seizure exists within the four corners of the affidavit.

## II. Veracity Hearing

■■■ A defendant may contest the sufficiency of a warrant affidavit on the ground that the statements of the affiant are false. *People v. Winden,* 689 P.2d 578 (Colo.1984). Since probable cause determinations are based on inferences drawn from the language in warrant affidavits, false statements may result in a mistaken finding of probable cause. *Id.* at 582–83. If the defendant shows some good faith basis in fact to question the accuracy of an affidavit for a search

warrant, a veracity hearing should be held. *People v. Dailey,* 639 P.2d 1068, 1074–75 (Colo.1982).

■■■ At a veracity hearing, *Dailey* requires that three issues be addressed: (1) whether the warrant affidavit contains false statements; (2) whether the false statements must be excised; (3) if the statements are excised, whether the remaining statements establish probable cause to authorize the search. *People v. Young,* 785 P.2d 1306, 1308 (Colo.1990) (citing *Dailey,* 639 P.2d at 1075). False statements in affidavits must be stricken under the Fourth Amendment of the United States Constitution if the source of error is intentional falsehood or reckless disregard for the truth by the affiant. *Winden,* 689 P.2d at 582. If the error resulted from some other source, such as negligence or a good-faith mistake, the question of appropriate sanctions, if any, is initially left to the discretion of the trial court, but subject to our subsequent review. *Id.* Thus, not all false information in a warrant affidavit need be stricken; rather, the source of error is determinative. *Young,* 785 P.2d at 1309. To evaluate the falsity of a statement or the source of an error, a court may consider facts outside the four corners of an affidavit. *Dailey,* 639 P.2d at 1073.

Reed contested the veracity of two statements in the affidavit in support of the warrant. At the veracity hearing, Reed first challenged an allegation in the affidavit which stated, "On 11/04/01 Michael Reed and his associate Levi Ornelas were observed smoking cigarettes outside of room twelve at approximately 11:00 P.M." He also disputed a second statement in the affidavit: "Michael Reed had rented room number three at the Loveland Motel and changed into room number twelve on 11/04/01."

Again, it is unclear whether the trial court struck the second statement at all and whether it completely or only in part excised the first statement from the affidavit.[1] For both statements, we disapprove of any excision from the affidavit as discussed below.

---

1. In its oral order, the trial court said there was no evidence to support the fact that Reed was smoking outside motel room 12 with Mr. Ornelas. It is unclear whether the court struck the entire statement, including the reference to smoking cigarettes, or merely that Reed was associated with Ornelas.

■ We apply the *Dailey* test to the allegedly false information included within the affidavit. Under *Dailey,* a trial court must first determine the veracity of the contested statement. Second, it is imperative that the trial court make specific findings why the false statements are in the affidavit: whether the error was intentional, or with reckless disregard for the truth, or due to negligence or a good faith mistake. We do not address the third prong of *Dailey* which requires an evaluation of whether the excised material affected a finding of probable cause because we conclude that none of the contested information should have been stricken.

## A. False Statements

In response to testimony in the veracity hearing, the trial court determined that some or all of the first statement, describing Reed and Ornelas smoking cigarettes together outside Room 12 two days prior to the search, was false. Specifically, Ornelas testified that he did not know of Reed until he and Reed were together at the Larimer County Detention Center. Since the prosecution adduced no evidence to the contrary, the court found the statement to be false.

Similarly, the court determined the second statement that Reed had initially rented Room 3 and moved to Room 12 on November 4, 2001, to be clearly erroneous based on motel records and testimony given by Sarah Verner Reed.[2] However, the trial court also found that evidence and testimony indicated the defendant had been in Room 3 prior to November 4th. In addition, the motel housekeeping believed that defendant was renting Room 3.

## B. Source of Error

■ After the trial court assessed the veracity of the disputed statements, it did not follow the second prong of the *Dailey* test: It did not evaluate the origin of error for the false statements. Because the trial court deleted all or part of the first statement without determining the source of error, its strike of that information was contrary to *Dailey.* In addition, if the trial court had performed an evaluation of the origin of error in the first statement, it would not have excised any of it; testimony from the veracity hearing suggests that the source of error was not an intentional falsehood, reckless disregard for the truth, or even negligence. Rather, the affiant relied on the first-hand observations of a fellow officer who recognized Ornelas and Reed. It is well-established that an affiant need not have personal knowledge of statements in an affidavit under the fellow officer rule. *People v. Alexander,* 797 P.2d 1250, 1253–54 (Colo.1990) (officer who does not personally possess sufficient information to constitute probable cause may nevertheless make a valid arrest if (1) officer acted upon the communication of a police officer, and (2) the police, as a whole, have sufficient information to constitute probable cause); *People v. Pannebaker,* 714 P.2d 904, 908 (Colo.1986) (information supplied by fellow officer was reliable). Therefore, because the reasonable affiant could have relied on information provided by a fellow officer, a trial court cannot excise that information from the warrant affidavit.

Similarly, the trial court did not evaluate the source of error for the second statement which incorrectly stated that defendant had moved from Room 3 to Room 12 on November 4th. Like the first statement, this statement cannot be attributed to intentional falsehood or reckless disregard for the truth. At best, it shows negligence on the affiant's part to consult the motel records. Again, since a reasonable affiant can rely on information from a fellow officer or from a motel manager who stated that Reed rented motel Room 3, and because evidence indicates that Reed had been in Room 3 prior to November 4th, this error did not require excision from the warrant affidavit. *See Young,* 785 P.2d 1306 (in a similar case, where officer reasonably relied on information that later proved to be false, the officer was not negligent).

In summary, no part of either of the two disputed statements should have been stricken from the affidavit under *Dailey.* Accordingly, we next proceed to determine whether

---

**2.** Mrs. Reed is not married to the defendant.

the unexcised affidavit supported a showing of probable cause.

### III. Probable Cause

A search warrant may only be issued upon a showing of probable cause supported by oath or affirmation particularly describing the place to be searched and the things to be seized. U.S. Const. amend. IV.; Colo. Const. art. II, § 7. Probable cause exists when an affidavit for a search warrant alleges sufficient facts to warrant a person of reasonable caution to believe that evidence of criminal activity is located at the place to be searched. *People v. Quintana,* 785 P.2d 934, 936 (Colo.1990). When a reviewing court examines a search warrant after the fact to determine whether it was valid, that court must assess whether the affidavit provided a "substantial basis" for the conclusion that probable cause existed. *Illinois v. Gates,* 462 U.S. 213, 239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

Reed contends that the affidavit in support of a warrant to search Room 12 and his truck failed to articulate probable cause. Because probable cause must be based on the information contained within the four corners of the affidavit we review only the statements recited therein.

The affidavit stated that officers had prior knowledge that Reed possessed precursors to the methamphetamine. In a routine stop for a broken taillight, a few days prior to the November 6th search, a police officer discovered in Reed's vehicle an empty acetone container and a white powdery substance which field tested positive for ephedrine. Furthermore, Reed and two others were recognized by King Soopers' employees as responsible for stealing large amounts of cold tablets that contained pseudoephedrine, another ingredient in methamphetamine production.

The affidavit alleged that Reed is an associate of Levi Ornelas and that both have prior arrests: Ornelas for manufacturing methamphetamine in January 2001 and Reed for the possession of dangerous drugs in August 1994. Reed and Ornelas were observed smoking together outside Room 12 a couple of days prior to the search. The affiant stated that based on his training,

methamphetamine producers commonly smoke outside to avoid igniting vapors associated with production.

The affidavit further recited that remains of a methamphetamine manufacturing lab were discovered in Room 3 at the Loveland Motel. Room 3 contained a white cake-like substance that looked like the leftover product from a "pill extraction." In addition, iodine stains were found on the toilet indicating that a liquid had been poured into it. Furthermore, three to four very strong air fresheners were left in Room 3. Based on the affiant's training and experience, people involved in the manufacture of methamphetamine use air fresheners to cover the smell of production.

Finally, the affidavit stated that Reed had rented Room 3 and then moved to Room 12 and that he drove his truck into the Loveland Motel parking lot on his way to Room 12.

Based on the facts recited in the affidavit, we find that the affidavit provided sufficient information to support probable cause. This case is particularly analogous to *People v. Hakel,* 870 P.2d 1224 (Colo.1994). In *Hakel,* police monitored two controlled purchases of cocaine by a confidential informant. *Id.* During the commission of a deal, the police observed Hakel's behavior: he drove from his home to a motel; entered his motel room; drove to a parking lot of a grocery store where he met his contact; and immediately thereafter returned to his residence. *Id.* Hakel had previously been convicted of possession of cocaine and possession of cocaine with intent to distribute. *Id.* at 1227. Based on surveillance in the previous conviction alongside new information from the two controlled sales, police obtained a search warrant for the motel room and recovered cocaine powder. *Id.* at 1227–28. The police thereafter sought a search warrant of Hakel's home for records of drug transactions although there was no current evidence that Hakel kept these in his home. *Id.* Hakel claimed that the second search warrant was invalid because there was no nexus between evidence of criminal conduct and his residence. *Id.* This court found important that Hakel had a predictable pattern of behavior,

that he had previously kept such records, and that Hakel went to the motel room directly from his residence en route to the site of the sale and returned to his residence immediately after the sale. *Id.* Therefore, although the affidavit contained no specific evidence of criminal activity at Hakel's residence, "the link between suspected criminal activity and a specific location to be searched can be established by circumstantial evidence and proper inferences drawn therefrom." *Id.* at 1228. As such, common sense inferences from the officer's personal knowledge of Hakel's present and prior conduct, including the knowledge that on one occasion evidence of Hakel's drug trafficking had been found in a motel room visited by Hakel while traveling to the site of the drug transaction, established probable cause that evidence of the transaction would be located in Hakel's residence. *Id.; see also Young,* 785 P.2d 1306 (probable cause to search home where methamphetamine precursor found in defendant's car).

In this case, the affidavit established a sufficient nexus between the criminal activity contemplated and the place searched. The defense argues that notwithstanding that "[t]here might have been hypothetically been something illegal going on in Room 3" because "drug paraphernalia and drug-related precursors" were discovered in Room 3, nothing in the affidavit connects the discovery in Room 3 with any potential criminal activity in Room 12.

Like *Hakel,* the affidavit shows more than a substantial link between Room 3 and Room 12 and Reed's truck. The officers in this case had prior knowledge from the theft at King Soopers and from the traffic stop that Reed possessed ingredients for methamphetamine production: pseudoephedrine, ephedrine, and acetone. Combined with the information that Room 3 contained signs of methamphetamine production—in addition to the fact reasonably included in the affidavit, that Reed had rented Room 3 prior to November 4th—context was given to the observation that Reed and Ornelas, an individual connected to methamphetamine production, were seen smoking cigarettes outside Room 12. Lastly, the affidavit states that Reed

drove his truck into the Loveland Motel parking lot on his way to Room 12 on the day of the search.

Therefore, the officers' knowledge of Reed's prior and present conduct, alongside evidence of illegal activity in Room 3, gives rise to common sense inferences that evidence of criminal activity would be recovered in Room 12 and in Reed's vehicle. Because we find probable cause exists within the four corners of the affidavit, we need not address the good faith exception to the exclusionary rule.

### IV. Conclusion

For the foregoing reasons, we find that when *Dailey* is properly applied to the false statements in the warrant affidavit, it compels the conclusion that no information should have been excised. We hold that the affidavit as presented to the issuing magistrate and without excision satisfied probable cause. Accordingly, we reverse the order of the trial court.