The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
May 1, 2025

## 2025COA45

**No. 24CA0683, *Johnson v. Staab* — Damages — Civil Action for Deprivation of Rights; Constitutional Law — Colorado Constitution — Searches and Seizures — Search Warrant Affidavits — False Statements and Material Omissions**

A division of the court of appeals concludes for the first time that, for purposes of seeking damages under section 13-21-131, C.R.S. 2024, no constitutional violation occurs where a police officer's material omissions from and false statements in a search warrant affidavit were the result of negligence or mistake, as opposed to having been made intentionally or with reckless disregard for the truth.

Court of Appeals No. 24CA0683
City and County of Denver District Court No. 22CV33434
Honorable Stephanie L. Scoville, Judge

Ruby Johnson,

Plaintiff-Appellee,

v.

Gary Staab, an officer of the Denver Police Department, in his individual capacity, and Gregory Buschy, an officer of the Denver Police Department, in his individual capacity,

Defendants-Appellants.

---

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE TOW
Dunn and Meirink, JJ., concur

Announced May 1, 2025

---

Baker & Hostetler LLP, Paul G. Karlsgodt, Michelle R. Gomez, Colby M. Everett, Denver, Colorado; Law Offices of Ann M. Roan, LLC, Ann M. Roan, Boulder, Colorado; American Civil Liberties Union Foundation of Colorado, Timothy R. Macdonald, Sara R. Neel, Anna I. Kurtz, Lindsey M. Floyd, Denver, Colorado, for Plaintiff-Appellee

Wells, Anderson & Race, LLC, William T. O'Connell, III, Saugat K. Thapa, Denver, Colorado, for Defendant-Appellant Gary Staab

Katie McLoughlin, Acting City Attorney, David Murphy, Assistant City Attorney,Madison L. Smith, Assistant City Attorney, Denver, Colorado, for Defendant-Appellant Gregory Buschy

¶ 1     Defendants, Sergeant Gregory Buschy and Detective Gary Staab, appeal the judgment entered on a jury verdict in favor of plaintiff, Ruby Johnson. Claiming that Buschy and Staab illegally searched her home, Johnson sued them under section 13-21-131(1), C.R.S. 2024, which provides a private right of action against peace officers "who, under color of law, subject[] or cause[] to be subjected . . . any other person to the deprivation of any individual rights . . . secured by the bill of rights, article II of the state constitution." Johnson alleged that Buschy and Staab obtained a search warrant for her house by submitting an affidavit that was tainted by material omissions and false statements.

¶ 2     This appeal requires us to consider whether, for purposes of seeking damages under the statute, a constitutional violation occurs where the officers' false statements in and omissions from the affidavit were the result of negligence or mistake — as opposed to being made intentionally or with reckless disregard for the truth. We conclude that such negligence or mistake does not create a constitutional violation. And because the jury was not told to treat such negligent or mistaken statements or omissions differently from any misleading statements and omissions made intentionally or

1

recklessly, it was incorrectly instructed. As a result, we reverse the judgment and remand for a new trial.

## I.   Background

¶ 3    A truck with firearms, ammunition, drones, cash, a debit card, and an iPhone was stolen. The owner reported the theft to the police. The owner used the Find My iPhone app (the App) on a separate device to track the stolen phone, which showed that the phone was pinging in multiple locations. The owner reported the phone's movements to the police and sent them a screenshot of the App, which depicted a map with a blue circle encompassing or touching multiple buildings; within the blue circle, there was a small red dot on top of a house. The image also contained an address for the house. The owner later reported that the phone's last ping was at the same location.

¶ 4    A dispatcher recorded information from a police officer (who was talking to the owner on the phone) that the truck was near a park, "right around the corner" from the location in the screenshot. The owner also told the police that someone tried to use his wife's debit card online.

¶ 5    The owner drove to the house on which the App displayed the red dot. He did not see the truck but saw a garage that could accommodate the truck. Police surveilled the house but did not see the truck, nor did they observe any suspicious activity. Police also learned that an elderly woman, Johnson, lived at the house.

¶ 6    The next day, Buschy learned about the theft and assigned the case to Staab. Staab thought that the App's screenshot's red dot showed the phone was at the house. Buschy was unaware of the App's functionality or accuracy.

¶ 7    Staab and Buschy discussed applying for a warrant to search the house. Both men had concerns about probable cause related to staleness given the amount of time (seventeen hours) that had elapsed since the screenshot was taken. Buschy told Staab to speak with the District Attorney's Office about probable cause. Staab spoke with a deputy district attorney, who had experience using the App both professionally and personally and believed that it was reliable. She told Staab that she did not believe staleness undermined probable cause. Buschy also called the deputy district attorney, who suggested that he ask the owner if he had any experience using the App.

¶ 8    Buschy did so, and the owner told him that he had used the App to find a lost phone "within feet." The owner also told Staab that he had previously used the App to find his wife's phone.

¶ 9    Staab prepared an affidavit in support of a warrant to search the house and sent it to the deputy district attorney to review. The deputy district attorney reviewed it, made changes, discussed it with her supervisor, and had her supervisor review it. The deputy district attorney approved the warrant affidavit.

¶ 10    Buschy reviewed the affidavit and, believing that it established probable cause, approved it. Staab submitted the proposed warrant for judicial approval, and a judge found probable cause and issued the warrant.

¶ 11    As relevant to this appeal, the warrant affidavit provided that the day after the truck was stolen, at

> 0845 hours- Your Affiant phoned [the] listed number for the victim . . . , who advised Your Affiant he had an old iPhone he left in his truck and he uses an app, find my phone. The victim related that he utilized the find my iPhone app in an attempt to track down his own vehicle/belongings, and the phone pinged to a house . . . [on] N. Worchester St. Denver, CO 80239. He reported the first ping occurred on 01/03/2021, at 1124 hours, and the last ping was on 01/03/2021, at 1555 hours.

4

During this time the phone had not moved. The phone has not pinged at the location since and the victim believes the phone might have died. Victim added he had rented a car and drove by the address and didn't see his truck at the location but stated it could be in the garage. The phone was pinging at the address when the victim drove by. Victim has used this iPhone app on other occasions, where he found his wife's phone in the middle of a field, with an accuracy of five feet. A photo of the app shows a red dot, signifying the phone being inside the house . . . [on] N Worchester St. Denver, CO 80239.

¶ 12 Officers executed the search warrant with the SWAT team, pointed guns at Johnson, ordered her to leave the house, placed her in a police car, and drove her a short distance away. After about thirty-five minutes, the search ended without either the truck or the iPhone being found at the house. There was some damage to Johnson's house and property.

¶ 13 Johnson sued Staab and Buschy, asserting that her civil rights had been violated because the affidavit supporting the search warrant for her house contained "knowingly or recklessly false statements of material fact" and it "intentionally or with reckless disregard, omitted material, adverse facts." Without these false

statements and omissions, Johnson alleged, there was insufficient probable cause for the search warrant.

¶ 14 Specifically, Johnson alleged that the following statements in the warrant affidavit were false:

(1) The victim "reported the first ping occurred on 01/03/2021, at 1124 hours."

(2) The victim reported that "the last ping was on 01/03/2021, at 1555 hours."

(3) "During this time the phone had not moved."

(4) The victim stated that the stolen truck "could be in the garage."

(5) "Victim has used iPhone app on other occasions . . . ."

(6) "A photo of the app shows a red dot, signifying the phone being inside the house . . . ."

¶ 15 Johnson also alleged that the following information was omitted from the affidavit:

(1) Staab believed that there was not probable cause when he prepared the affidavit.

(2) Buschy had the same concerns about probable cause.

(3)   Staab and Buschy were concerned about probable cause when they called the deputy district attorney and thought she would tell them there was not probable cause.

(4)   The phone pinged all over Denver the day the truck was stolen.

(5)   Staab had no experience with, training on, or knowledge about the App that he was relying on.

(6)   Buschy had no experience with, training on, or knowledge about the App that he was relying on.

(7)   The truck was not at the house.

(8)   Staab never considered Johnson, a seventy-eight-year-old woman, to be a suspect.

(9)   While doing surveillance at the house, officers saw no suspicious activity.

(10)  The victim reported to Staab that later in the morning after the truck was stolen, someone tried to use his wife's debit card online.

¶ 16    A mobile forensics expert testified that the App displays a location for the phone based on Wi-Fi hotspots or routers, GPS satellites, and Bluetooth beacons.  He testified that the accuracy of

7

the location depends on the sources and number of data points received from those sources, as well as the phone's settings. And he testified that, in the screenshot, the circle represented where the phone may be whereas the smaller dot was just the center of that circle.

¶ 17    The jury found Staab and Buschy liable. The jury awarded Johnson $1.25 million in noneconomic damages, $10,000 in economic damages, and $1.25 million dollars in punitive damages per officer.[1]

---

[1] The trial court granted a post-trial motion resulting in the reduction of the economic damages to $200.

## II. Jury Instruction

¶ 18 Defendants contend that the trial court reversibly erred by incorrectly instructing the jury.[2] We agree.

### A. Additional Background

¶ 19 Jury Instruction No. 16 provided as follows:

> To show that Plaintiff was deprived of her article II, section 7 rights, Plaintiff must prove each of the following two things by a preponderance of the evidence:
>
> 1. In the warrant affidavit, Defendant made false statements, or omissions that created a falsehood; and
>
> 2. Those false statements or omissions were material, or necessary, to the finding of probable cause for the arrest.
>
> To determine whether any misstatements or omissions were material, you must subtract

---

[2] Each of the defendants filed his own opening brief. In a pattern repeated throughout the briefs, however, Buschy argued a point, and Staab summarily joined in that argument. For some issues, however, Staab added to Buschy's argument. This manner of briefing is inconsistent with the rules of appellate procedure. *See* C.A.R. 28(h) ("[A]ny party may adopt by reference any part of another's brief, but a party may not both file a separate brief and incorporate by reference the brief of another party."). Nevertheless, as it relates to the specific argument that the jury was incorrectly instructed — which we ultimately conclude is the dispositive issue on appeal — Staab simply adopted Buschy's argument without attempting to expound on it. Thus, notwithstanding Staab's noncompliance with C.A.R. 28(h), we exercise our discretion not to strike his brief.

> the misstatements from the warrant affidavit, and add the facts that were omitted, and then determine whether the warrant affidavit, with these corrections, would establish probable cause.
>
> You may consider information outside the affidavit to determine whether it contained material misrepresentations or material omissions.

Buschy and Staab objected to this instruction, arguing that to be a correct statement of law it needed to be revised to include that "the defendants intentionally or recklessly included false statements or omissions." The trial court declined to modify the instruction.

## B. Standard of Review

¶ 20 A trial court must correctly instruct the jury on all matters of law. *Day v. Johnson*, 255 P.3d 1064, 1067 (Colo. 2011). "We review de novo whether a particular jury instruction correctly states the law" and whether the "instructions as a whole accurately informed the jury of the governing law." *Id.*

## C. Applicable Law

¶ 21 As noted, section 13-21-131 authorizes a private right of action against a peace officer "who, under color of law, subjects or causes to be subjected . . . any other person to the deprivation of any individual rights . . . secured by the bill of rights, article II of

the state constitution." Thus, to prove a claim under section 13-21-131, a plaintiff must establish that there was a violation of a right embodied in the bill of rights of the Colorado Constitution. *See Puerta v. Newman*, 2023 COA 100, ¶ 2.

¶ 22    Article II, section 7 of the Colorado Constitution prohibits the issuance of a search warrant except upon probable cause supported by oath or affirmation particularly describing the place to be searched and the things to be seized. *People v. Miller*, 75 P.3d 1108, 1112 (Colo. 2003). A challenge can be brought to the accuracy of an affidavit supporting a search warrant. *See, e.g., People v. Dailey*, 639 P.2d 1068, 1074 (Colo. 1982). And "[s]ince probable cause determinations are based on inferences drawn from the language in warrant affidavits, false statements may result in a mistaken finding of probable cause." *People v. Reed*, 56 P.3d 96, 99 (Colo. 2002).

## D.    Analysis

¶ 23    The crux of the parties' dispute is whether the inclusion of *any* material, false statements in or the omission of *any* material facts from a warrant affidavit — even if the inclusion or omission is the

11

product of negligence or simple mistake — violates article II, section 7.

¶ 24     Johnson relies on *Dailey* and *Reed* to support her contention that "under article II, section 7, courts are empowered to suppress evidence where affidavit errors result from 'the negligence or good faith mistake of either the officer or the informant.'" (Quoting *Dailey*, 639 P.2d at 1075.)  But Johnson overstates *Dailey* and *Reed*.

¶ 25     In *Dailey*, the supreme court concluded that a trial court determines whether the affidavit contains erroneous statements and, if so, whether "the source of the error is intentional falsehood or reckless disregard for the truth on the part of the officer-affiant." 639 P.2d at 1075.  If it finds that the challenging party has shown by a preponderance of the evidence that the source of the error is intentional falsehood or reckless disregard for the truth, it must strike the false statements from the affidavit.  *Id.*

¶ 26     Similarly, in *Reed,* the supreme court applied the *Dailey* test and explicitly differentiated between false statements made intentionally or with reckless disregard for the truth and those made due to negligence or a good faith mistake, stating "it is

imperative that the trial court make specific findings why the false statements are in the affidavit: whether the error was intentional, or with reckless disregard for the truth, *or* due to negligence or a good faith mistake." *Reed*, 56 P.3d at 100 (emphasis added). Statements made negligently or due to a good faith mistake do not require excision from the affidavit. *See id.*[3]

¶ 27    In response to questioning during oral argument, Johnson's counsel appeared to acknowledge that suppression of the evidence is only required when the materially false information was the product of knowledge and intent or reckless disregard for the truth. But counsel contended that, under our supreme court's jurisprudence, the inclusion of material negligent or mistaken statements in (or the existence of material negligent omissions from) a warrant affidavit also results in a constitutional violation

---

[3] Other supreme court cases similarly require the exclusion of intentional or reckless misstatements or omissions from warrant affidavits but generally recognize the possibility of unidentified "appropriate sanctions" for other warrant affidavit errors. *See, e.g., People v. Winden*, 689 P.2d 578, 583 (Colo. 1984); *People v. Millitello*, 705 P.2d 514, 518 (Colo. 1985); *People v. Flores*, 766 P.2d 114, 119 (Colo. 1988); *People v. Cox*, 2018 CO 88, ¶ 9.

cognizable under section 13-21-131, even if evidence suppression would not be warranted. We disagree.

¶ 28    We acknowledge that our supreme court has generally observed that

> [t]he errors, however, could have resulted from the informant's perjury or reckless disregard for the truth, or from the negligence or good faith mistake of either the officer or the informant. Other sources of error can be imagined. *We consider it inadvisable to attempt to develop the consequences which would follow under the United States and Colorado Constitutions from each of the various possibilities as to the origin of the error.*

*Dailey*, 639 P.2d at 1075 (emphasis added); *accord Reed*, 56 P.3d at 99 ("If the error resulted from some other source, such as negligence or a good-faith mistake, the question of appropriate sanctions, if any, is initially left to the discretion of the trial court, but subject to our subsequent review."). But we do not read this language as a holding by our supreme court that the inclusion of negligent or mistaken statements in the affidavit, although not requiring suppression of the evidence, nevertheless creates a constitutional violation. To the contrary, in *Dailey*, the supreme court said, "We do not agree with the trial court's assumption that

14

*all false information* in an affidavit for search warrant must be stricken, without regard to the source of the error, before determining *its sufficiency to establish probable cause.*" 639 P.2d at 1075 (emphasis added). In other words, a warrant may be supported by probable cause even if the supporting affidavit contains negligent or mistaken misstatements. *See Reed,* 56 P.3d at 100 (holding that trial court erred by excising statements that were "[a]t best" negligent when assessing whether affidavit established probable cause). And if such a warrant is supported by probable cause, the search pursuant to that warrant does not violate article II, section 7.

¶ 29 We are unpersuaded by Johnson's remaining contentions.

¶ 30 Johnson argues that negligent statements and omissions must create a constitutional deprivation. To hold otherwise, she contends, essentially grafts the federal standard for qualified immunity in 42 U.S.C. § 1983 into our statute because a plaintiff would be required to demonstrate more than just a constitutional violation.

¶ 31 But we are neither creating § 1983-style immunity nor requiring more than proof of a constitutional violation. Instead, we

15

conclude that proof of a deprivation of a constitutional right in this context requires a showing that there were misstatements in or omissions from the affidavit that were intentional or made with reckless disregard for the truth, without which the affidavit would not establish probable cause. This is consistent with what Colorado courts require to determine whether a warrant was issued with probable cause as required by article II, section 7. *See Dailey*, 639 P.2d at 1076; *Reed*, 56 P.3d at 100. And we reject Johnson's attempt, relying on an out-of-state case, to recast what constitutes a violation of article II, section 7. *See Garcia v. Centura Health Corp.*, 2020 COA 38, ¶ 45 (out-of-state cases are not binding precedent on this court).

¶ 32    Next, Johnson contends that we should not impose a state-of-mind requirement where section 13-21-131 has none. While section 13-21-131 has no state-of-mind requirement, as noted, a plaintiff must show that there was a violation of a constitutional right. § 13-21-131(1). Johnson herself acknowledges that different violations of the state constitution have different state-of-mind requirements. Nothing in section 13-21-131 eliminates the necessity of satisfying the applicable state-of-mind requirement for

16

the constitutional violation at issue. And, as noted, the state-of-mind requirement for the constitutional violation on which Johnson bases her claim — indeed, which she pleaded in her complaint — is intent or recklessness. *See Dailey*, 639 P.2d at 1076; *Reed*, 56 P.3d at 100.

¶ 33    For similar reasons, we reject Johnson's contention that requiring a plaintiff to prove state of mind to show a constitutional violation renders section 13-21-131(4)(a) a nullity. Section 13-21-131(4)(a) states,

> [I]f the peace officer's employer determines on a case-by-case basis that the officer did not act upon a good faith and reasonable belief that the action was lawful, then the peace officer is personally liable and shall not be indemnified by the peace officer's employer for five percent of the judgment or settlement or twenty-five thousand dollars, whichever is less.

While this provision has limited application for a constitutional violation that requires a state of mind greater than negligence, it still bears on other constitutional deprivations that require no state of mind or encompass negligence.

¶ 34    In sum, the jury instruction misstated the law because it did not direct the jury to only excise the false statements from, or

correct the omissions in, the affidavit that the jury found were made intentionally or with a reckless disregard for the truth. *Cf. Dailey*, 639 P.2d at 1075; *Reed*, 56 P.3d at 100.

### E.    Harmful Error

¶ 35    Johnson contends that any error was harmless. We disagree.

¶ 36    We "must disregard any error or defect in the proceeding [that] does not affect the substantial rights of the parties." C.R.C.P. 61; *see also* C.A.R. 35(c). In the context of instructional error, "a judgment will not be reversed for refusal to give requested instructions where there was not resulting substantial, prejudicial error." *Schuessler v. Wolter*, 2012 COA 86, ¶ 11. "That's the result only if the jury 'probably would have decided [the] case differently if given a correct instruction.'" *Dorsey & Whitney LLP v. RegScan, Inc.*, 2018 COA 21, ¶ 46 (quoting *Gasteazoro v. Cath. Health Initiatives Colo.*, 2014 COA 134, ¶ 12).

¶ 37    The instruction told the jury to subtract all misstatements from the affidavit and add all omissions. It did not instruct the jury to excise only intentional or reckless misstatements or add back only those facts that were intentionally or recklessly omitted. We cannot say whether the jury thought any of the misstatements or

omissions were intentional or reckless or simply negligent or mistaken. As a result, "it cannot be known" whether the jury's verdict was based on excising only the intentionally or recklessly made statements or adding in only the intentionally or recklessly made omissions in the warrant affidavit. *Bullington v. Barela*, 2024 COA 56, ¶ 29 (quoting *Banning v. Prester*, 2012 COA 215, ¶ 19) (concluding that the instructional error was prejudicial where it could not be known whether the jury's verdict included a finding that the defendant failed to mitigate her damages).

¶ 38    Johnson contends that the jury's finding that Staab and Buschy acted willfully and wantonly such that she was owed exemplary damages under section 13-21-101, C.R.S. 2024, means that the jury necessarily found that they intentionally or with reckless disregard for the truth included or omitted statements in the affidavit. Again, we disagree.

¶ 39    The jury was given the following instruction:

> If you find in favor of Plaintiff on her claim against a Defendant, then you shall consider whether she should recover punitive damages against that Defendant. If you find beyond a reasonable doubt that the Defendant acted in a willful and wanton manner in causing Plaintiff's injuries or damages, you shall

19

> determine the amount of punitive damages, if any, that Plaintiff should recover from that Defendant.
>
> Punitive damages, if awarded, are to punish the Defendant and serve as an example to others.

¶ 40    "'[W]illful and wanton conduct' means conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff." § 13-21-102(1)(b), C.R.S. 2024.  A statement is made with a "reckless disregard for the truth" if the person making the statement "entertained serious doubts as to the truth of the statement or acted with a high degree of awareness of its probable falsity."  *Rosenblum v. Budd*, 2023 COA 72, ¶ 39 (citation omitted) (discussing actual malice); *see Beard v. City of Northglenn*, 24 F.3d 110, 116 (10th Cir. 1994) (noting that a demonstration of the officer's recklessness requires "evidence that the officer '"in fact entertained serious doubts as to the truth of his" allegations . . . and [a] factfinder may infer reckless disregard from circumstances evincing "obvious reasons to doubt the veracity" of the allegations'") (citation omitted).  Thus, the standard for willful and wanton

conduct differs from the standard for statements made with reckless disregard for the truth. *Cf. Credit Serv. Co. v. Dauwe*, 134 P.3d 444, 447 (Colo. App. 2005) (noting that section 13-21-102(1)(b)'s definition of willful and wanton conduct connotes subjective behavior whereas the term actual malice has an objective connotation).

¶ 41 Moreover, the punitive damage instruction was not limited to Johnson's claim that Buschy and Staab's search warrant affidavit was tainted by materially false information and omissions. Instead, it broadly asked the jury to consider whether Buschy and Staab "acted in a willful and wanton manner in causing Plaintiff's injuries or damages." Thus, we cannot determine whether the jury's determination regarding willful and wanton conduct was limited to the warrant affidavit or whether the jury also considered other facts — referenced by Johnson's counsel when arguing for punitive damages — such as the presence of a heavily armed SWAT team or the damage to the house.

¶ 42 Finally, the jury was instructed to reach the question of whether the conduct was willful and wanton only after concluding that the properly revised warrant lacked probable cause. But, had

21

the jury been instructed to leave in those falsehoods and leave out those omissions (if any) that it found were merely negligent or mistaken, it may not have found liability at all and, thus, may never have reached the question of punitive damages. Consequently, we simply cannot conclude that the jury's determination that Buschy and Staab acted willfully and wantonly renders the instructional error harmless.

## III.    Disposition

¶ 43    The judgment is reversed, and the case is remanded for a new trial.

JUDGE DUNN and JUDGE MEIRINK concur.